Larry BONNER, Plaintiff-Appellant,

v.

CITY OF PRICHARD, ALABAMA, et al., Defendants-Appellees.

No. 81–7005.

United States Court of Appeals, Eleventh Circuit.

Nov. 3, 1981.

Reams, Tappan, Wood, Vollmer, Phillips & Killion, P.C., Patricia K. Olney (Court-appointed), Mobile, Ala., for plaintiff-appellant.

J. Randall Crane, Mobile, Ala., for defendants-appellees.

Thomas R. McAlpine, Gen. Counsel, Ala. Dept. of Corrections, Montgomery, Ala., for amicus curiae State of Ala.

Before GODBOLD, Chief Judge, and RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

GODBOLD, Chief Judge:

■ This is the first case to be heard by the United States Court of Appeals for the Eleventh Circuit, established October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96–452, 94 Stat. 1995, and this opinion is the first to be published by the Eleventh Circuit. Under P.L. 96–452 the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the "new Fifth." This court, by informal agreement of its judges prior to October 1, 1981, confirmed by formal vote on October 2, 1981, has taken this case en banc to consider what case law will serve as the established precedent of the Eleventh Circuit at the time it comes into existence. We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.

Section 9 of the Act provides for the handling of cases that prior to October 1, 1981 had been filed with the former Fifth Circuit. Subparagraphs (1) and (2) thereof provide:

(1) If the matter has been submitted for decision, further proceedings in re-

spect of the matter shall be had in the same manner and with the same effect as if this Act had not been enacted.

(2) If the matter has not been submitted for decision, the appeal or proceeding, together with the original papers, printed records, and record entries duly certified, shall, by appropriate orders, be transferred to the court to which it would have gone had this Act been in full force and effect at the time such appeal was taken or other proceeding commenced, and further proceedings in respect of the case shall be had in the same manner and with the same effect as if the appeal or other proceeding had been filed in such court.

■ In the former Fifth Circuit a case filed prior to October 1, 1981 was "submitted for decision" to that court within the meaning of § 9 of the Act on the date it was heard by an oral argument panel of that court or fully decided by a three judge screening panel without oral argument. Thus a case designated before October 1, 1981 for assignment to an oral argument calendar and scheduled for hearing after October 1, 1981 would not be "submitted for decision" to the old Fifth Circuit but, in due course, would be submitted to the Eleventh or the new Fifth. During the routine screening of this case in September 1981 the initiating judge assigned the case for oral argument. Since the case was not decided by a screening panel, and there were no oral argument panels sitting before October 1 to which it could be submitted, it was not (and could not be) "submitted for decision" before October 1. The appeal arose in the geographical confines of the Eleventh Circuit, so that, under § 9(2) of the Act, it became an Eleventh Circuit case to be submitted to and decided by that court, and it has been properly voted for hearing en banc by the members of that court.

## I. History of the case

During his pretrial confinement at the Prichard (Alabama) City Jail, appellant Larry Bonner, proceeding in forma pauperis, filed a pro se action under 42 U.S.C.A. § 1983 (West 1974) against the City of Prichard and city officials. Counsel was appointed for him. The amended complaint set forth six causes of action. Under the first five causes of action Bonner sought declaratory and injunctive relief for various alleged violations of the Constitution of the United States and the laws of Alabama allegedly perpetrated at the city jail against Bonner and those similarly situated. The sixth cause of action alleged that Bonner was denied proper medical treatment following injuries he sustained at the jail and that he was thereafter assaulted by a jail guard with a fire extinguisher. He claimed one million dollars in damages under this count.

Before the defendants filed an answer to the amended complaint the magistrate assigned to make recommendations in the case to the district judge made a *sua sponte* recommendation that the case be dismissed without prejudice. The magistrate supported his recommendation by noting that:

1. Bonner was no longer imprisoned at Prichard jail;[1]

2. Bonner's claim would not be barred because the governing statute of limitations was tolled until Bonner completes serving a ten year sentence for robbery;

3. Transporting Bonner and other witnesses to court to prosecute the case would be a security risk to guards and public and burden and expense upon prison administrators;

4. Based upon the experience of the district court[2] many suits of this nature are filed by prisoners who desire a brief respite in court away from prison routine;

---

1. After Bonner filed this suit and presumably before the magistrate made his recommendation Bonner was tried and convicted on charges of robbery and burglary, sentenced to ten years, and transferred from the Prichard jail to a state prison.

2. Prisoner cases were said to represent one-third of the civil docket in the Southern District of Alabama. The district has been referred to as "the most experienced district in trying prisoner cases." Turner, W. B., *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv.L.Rev. 610, 615 (1979).

5. Based on the experience of the court many such cases are abandoned when the plaintiffs are released;

6. Bonner's disadvantage in prosecuting his case while in prison will terminate upon his release;

7. The Fifth Circuit has urged district courts to take "imaginative and innovative" steps in dealing with prisoner § 1983 cases; [3]

8. Fed.R.Civ.P. 27 and identical state procedures can be invoked if necessary to preserve the testimony of witnesses;

9. To merely stay the action until Bonner is released from custody would clutter the files of the court.

The magistrate conducted no hearing with respect to his recommendation and the supporting notations. Bonner filed objections to the magistrate's recommendations. The district judge, presumably adopting the magistrate's recommendation, ordered the case dismissed without prejudice to its being refiled either when Bonner was returned to the Prichard jail or was released from incarceration.

On appeal Bonner only challenges the dismissal of the sixth cause of action.[4]

II. The choice of governing law

■ Under the established federal legal system the decisions of one circuit are not binding on other circuits. "[I]t is common knowledge that the decisions of the court of appeals for one circuit are not binding upon the courts of appeals for other circuits." 1B J. Moore, Federal Practice ¶ 04.02[1] (1980). The various circuits differ somewhat in the extent to which they treat their own decisions as binding on themselves. Some appear at times to treat their own decisions as merely persuasive; others by rule or practice permit one panel to overrule another after prior notice to all

judges of what is proposed, followed by no objection. The old Fifth followed the absolute rule that a prior decision of the circuit (panel or en banc) could not be overruled by a panel but only by the court sitting en banc. The Eleventh Circuit decides in this case that it chooses, and will follow, this rule.

The act dividing the old Fifth Circuit into two circuits did not address the issue of what body of law would be adopted or otherwise would become the body of law of either of the two circuits for cases "submitted for decision" on and after October 1, 1981. To decide this case, and later Eleventh Circuit cases, we must decide whether this court shall adopt some established body of law as its body of precedent, and if so, effective as of its coming into existence, what established body of law will be chosen. For several reasons we choose the decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date.[5] We consider that body of law worthy for governance of legal affairs within the jurisdiction of this new circuit.

Stability and predictability are essential factors in the proper operation of the rule of law. In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court states the reasons for following past decisions:

Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.

3. *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977).

4. He has, therefore, abandoned any claim of error with respect to the first five causes of action.

5. We reserve for future consideration the effect on Eleventh Circuit law of other categories of

decisions by the old Fifth Circuit—for example, decisions handed down by the old Fifth after September 30, 1981 in cases submitted to that court for decision before October 1; possible future en banc decisions by the *old* Fifth changing what appeared to have been its rule as of September 30, 1981.

■

*Id.* at 403, 90 S.Ct. at 1789. Our choice is strongly influenced by these considerations.

Adoption of the former Fifth Circuit precedents will maintain and promote stability and predictability in the states of Alabama, Georgia and Florida, which comprise the geographical territory of the Eleventh Circuit. Since 1866 these three states have been part of the former Fifth Circuit, which in addition has included Texas, Louisiana, Mississippi and the Canal Zone. During this extensive span of time the decisions of the Fifth Circuit have been precedents applied in the states that now constitute the Eleventh Circuit. District courts and bankruptcy courts in these states have rendered the initial decisions in many of the cases decided by the former Fifth Circuit. Judges presently on this court, who among them have 265 years of federal judicial service in the Fifth Circuit, have been instrumental in establishing its law. Lawyers from Alabama, Georgia and Florida, through the litigation of thousands of cases, have made significant contributions to the development of this jurisprudence. Bench and bar are schooled in it. Citizens of these states and their legal advisers have relied upon it and structured their legal relationships with one another and conducted their affairs in accordance with it. By adopting the former Fifth Circuit precedent we maintain the stability and predictability previously enjoyed. The decisions of the former Fifth Circuit, adopted as precedent by the Eleventh Circuit, will, of course, be subject to the power of the Eleventh Circuit sitting en banc to overrule any such decision.

The Eighth Circuit was split in 1929 into the Eighth and Tenth. Two subsequent decisions by district courts in the new Tenth accepted the law of the Eighth as binding. In *Thompson v. St. Louis-San Francisco Ry. Co.,* 5 F.Supp. 785 at 789 (N.D.Okl.1934), the court observed:

The Tenth Circuit Court of Appeals, which is controlling of this court, has not passed upon the question, and since there is a difference in the holdings of two Circuit Courts of Appeals, the question is properly for the United States Supreme Court, rather than for this court's determination. However, it is not difficult to decide that the ruling of the Eighth Circuit Court of Appeals is controlling of the decision of the question now before the court. This court was formerly a part of the Eighth Judicial Circuit, having become disengaged therefrom upon the creation of the Tenth Judicial Circuit. The decisions of the Eighth Judicial Circuit are binding upon this court in the absence of decisions of the Tenth Circuit.... [T]he Eighth Circuit Court of Appeals' decision was rendered by two of the present judges of the Tenth Circuit Court of Appeals, and in my opinion the decision is controlling of this court.

The same conclusion was reached in *In re Meyers,* 1 F.Supp. 673, 674 (W.D.Okl.), *rev'd on other grounds sub nom. Barbee v. Spurrier Lumber Co.,* 64 F.2d 5 (10th Cir. 1933).

We find no convincing reason for taking any course other than for this court sitting en banc to adopt as precedent for the Eleventh Circuit the body of law of the old Fifth. We are not willing to reach the same result by an informal and unrevealed consensus among individual judges.[6] This would be inconsistent with the methodology of orderly administration of justice. It would not give fair notice to litigants, district courts, bankruptcy courts, and government agencies of what to expect. An informal consensus not given the imprimatur of judicial decision could be upset by changes in the composition of the court.

■ Nor is our rule-making power an appropriate vehicle for establishing a body of precedent.[7] Court rules generally address court procedures and court conduct of

---

**6.** See the discussion of this and other suggested mechanisms for establishing precedent in Baker, T., *Precedent Times Three: Stare Decisis in the Divided Fifth Circuit,* 35 Sw.L.J. 687, 711 *et seq.* (1981).

**7.** *See Baker, supra* at 717.

business. Congress has authorized the courts to "prescribe rules for the conduct of their business." 28 U.S.C.A. § 2071. Rule 47 of the Federal Rules of Appellate Procedure, adopted under that authority, authorizes the judges of the circuit to make rules of practice not inconsistent with FRAP, and in cases not provided for by FRAP authorizes the court of appeals "to regulate their practice in any manner not inconsistent with these rules." Neither the statute nor FRAP addresses the establishment of substantive law by court rule. The judges of this court, when judges of the former Fifth Circuit, maintained a distinct separation between their administrative and their judicial functions. The substantive law of the circuit was established by the exercise of judicial authority and procedural rules by administrative action. We consider it inappropriate to decide what this circuit's substantive law will be by any means other than judicial decision.

Theoretically this court could decide to proceed with its duties without any precedent, deciding each legal principle anew, and relying upon decisions of the former Fifth Circuit and other circuit and district courts as only persuasive authority and not binding. This court, the trial courts, the bar and the public are entitled to a better result than to be cast adrift among the differing precedents of other jurisdictions, required to examine afresh every legal principle that eventually arises in the Eleventh Circuit. This approach would be inconsistent with the virtually wholesale adoption in this country of English common law. The Eleventh Circuit sitting en banc will be an available forum for pursuit of a better rule and for our rejection of any old Fifth Circuit precedents that we consider should be no longer followed. This means for correcting error, searching for a better rule, and reexamining past analyses will be the same in this court as in the old Fifth and all other circuits. Superimposing an additional level of inquiry by having every panel examine every issue as a new issue is, under the circumstances, both unnecessary and undesirable. We tend to think of *stare decisis* as only "it is decided." The full phrase is *stare decisis et non quieta movere*—"to adhere to precedents *and not to unsettle things which are established.*" The prospect of decades of writing on a clean slate in pursuit of the possibility that in some case or cases we might find a rule we like better (or even conclude that an old Fifth Circuit decision is wrong) is at best unappealing, at worst catastrophic.

Failing to select a body of precedent would severely impede the operation of the court. Each panel decision on a principle not previously considered would create a new precedent and in turn an available argument that, pursuant to FRAP Rule 35, a rehearing en banc should be granted on the ground that because the case establishes a new precedent it "involves a question of exceptional importance." Every significant new principle—indeed every new principle, significant or not—would be a candidate for en banc consideration. This translates into a burden that this court could not discharge without seriously damaging its effectiveness, and it would mean years of waiting to determine the law of the circuit. We choose instead to begin on a stable, fixed, and identifiable base while maintaining the capacity for change.

### III. Application of the governing law

Looking to the body of old Fifth Circuit law adopted as precedent, we conclude that the case before us is controlled by *Mitchum v. Purvis,* 650 F.2d 647 (5th Cir. 1981), decided by the former Fifth Circuit July 13, 1981.[8] *Mitchum* is indistinguishable on its facts and on its reasoning. It concerned a state prisoner who filed a civil rights suit complaining of his treatment in another jail in the same county as Prichard. As in the instant case, counsel had been appointed for the prisoner, and there was no indication that counsel would be incapable of prose-

---

**8.** *Mitchum* was decided by a panel from Unit B of the old Fifth, the court having previously divided itself into administrative units as permitted by § 6 of the Omnibus Judgeship Act of 1978, Pub.Law No. 95–486. A decision of either administrative unit was binding on both units and became the law of the old Fifth.

cuting the action. The case was referred to the same United States magistrate who made the same recommendation as made in the present case and for the same reasons. The district court accepted the magistrate's recommendation and dismissed the case. Mitchum appealed, and the Fifth Circuit reversed, holding that the grounds for dismissal were inadequate.

Our adoption of the body of Fifth Circuit law as precedent, and of the decision in *Mitchum v. Purvis* as part of that adopted law, is not the end of the matter. Because the court considers this case en banc it can overrule its prior precedent; thus we could overrule *Mitchum* as a precedent, albeit an adopted one, for the Eleventh Circuit. The appellees join with the appellant in urging that we adopt Fifth Circuit precedent as our precedent, but urge that the court en banc overrule *Mitchum* as an Eleventh Circuit precedent. This we decline to do. We believe that *Mitchum* is sound.

■ Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Rudolph v. Locke*, 594 F.2d 1076, 1078 (5th Cir. 1979). This right is well established both in habeas corpus actions, *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and in civil rights cases, *Wolff v. McDonnell*, 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974); *Andrade v. Hauck*, 452 F.2d 1071, 1072 (5th Cir. 1971) (fourteenth amendment right to access extends to § 1983 suit concerning conditions of incarceration). It is inconsistent with the due process rights of prisoners to dismiss civil

rights cases filed by prisoners for the limited reasons advanced by the magistrate in this case and in *Mitchum*. A litigant capable of prosecuting an action cannot be denied access to the federal district court forum merely because of his status as a prisoner.[9] The appellees suggest there has been no denial of access because Bonner secured access to the court when he filed his complaint and the court thereafter and for appropriate reasons dismissed his complaint. They consider that denial of access is limited to the preparation and presentation to the court of complaints and petitions, such as the right to legal assistance and to legal materials in preparing documents for filing, and is unrelated to disposition by the court of a matter that the prisoner has filed. Thus, appellees say *Mitchum* is wrong because it relies on *Wolff v. McDonnell, supra,* a right of access case, for its holding that a prisoner is entitled to his "day in court." Ordinarily matters presented to and decided by the district court are reviewed under principles other than right of access. But the line is not drawn as precisely at the courthouse door as appellees would have it. Inmate access to the courts must be "adequate, effective and meaningful." *Bounds v. Smith, supra.* It is none of these if it embraces no more than being permitted to file a paper that, without determination of whether it states a claim legally sufficient and within the court's jurisdiction, is subject to dismissal on grounds of convenience to court and litigants. In discussing right of access *Bounds* refers to the rights of an indigent to a transcript in order that he have adequate and effective appellate review, and the right to counsel in order that he have a meaningful appeal. *Id.* Both of

---

**9.** Appellees rely upon language in *Tabor v. Hardwick*, 224 F.2d 526 (5th Cir. 1955), to the effect that imprisonment brings about withdrawal of many privileges and rights, so that the right of prisoners to file suits may be restricted. Subsequent decisions on the right of access to the courts have rejected the argument that mere status as a prisoner forecloses access to the courts. As the Supreme Court stated in *Wolff v. McDonnell, supra* :

Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retraction justified by the

considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049 [, 1060] 92 L.Ed. 1356 (1948). But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country. Prisoners . . . retain right of access to the courts.
418 U.S. at 555–56, 94 S.Ct. at 2974–75. (Citations omitted).

these are rights that reach beyond filing suit.

The appellees also urge that the dismissal is really a benefit to Bonner rather than a detriment because it permits him to pursue his cause of action at a time when he will no longer be at the disadvantage of prosecuting his case from behind bars. Appellees point out that Bonner can preserve the testimony of witnesses by depositions. The assessment of these "benefits" is more properly made by Bonner and his lawyer than by the appellees. Bonner and his counsel wish to proceed now. In the record before us there are not present substantial reasons that support refusing to permit Bonner to proceed.

The magistrate conducted no hearing with respect to his recommendation and the supporting notations. There is no evidence to support the notation relating to the security risk posed if Bonner or his witnesses were allowed to be present at trial. We only know that the witnesses are prisoners, that Bonner is under a ten year sentence for robbery and that, when a hearing was conducted on the issue of class certification, Bonner was transported for that hearing, and that, so far as the record shows, this was without incident.

There is no evidence that the testimony of Bonner or his witnesses will be unavailable. The presence of a state or federal prisoner as party or witness in federal court can be secured under a writ of habeas corpus *ad testificandum*, which the federal court has discretionary authority to issue. 28 U.S.C.A. § 2241(c)(5) (West 1971).[10] *See Ballard v. Spradley*, 557 F.2d 476, 480–81 (5th Cir. 1977). The court in *Mitchum* indicated that the district court should not ad-

dress concerns about the need to transport prisoners to court on a *sua sponte* motion to dismiss early in the litigation but only upon the filing of a petition for the writ. 650 F.2d at 648. In this case there was no petition for a writ before the magistrate. No hearing was held on the issue of securing the presence of prisoners, nor was Bonner given other opportunity to produce evidence.

The district court had no evidence before it that Bonner was incapable of effectively pursuing his suit. No hearing was held and no evidence presented on this issue. The record shows that Bonner had counsel who may be able to try the case even if Bonner cannot be present at trial because of his incarceration. If petitions for writs of habeas corpus *ad testificandum* are denied to Bonner or other imprisoned witnesses, counsel may seek leave of court under Fed.R. Civ.P. 30(a) to depose them, and these depositions can be used as a substitute for live testimony at trial under Fed.R.Civ.P. 32(a)(3). *Ball v. Woods*, 402 F.Supp. 803, 811 (N.D.Ala.1975) *aff'd without opinion sub nom. Ball v. Shamblin*, 529 F.2d 520 (5th Cir.), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).

The magistrate is correct that Bonner is no longer in the Prichard jail and is, therefore, not subject to repetition of the wrongs he alleges. This is not sufficient basis to deny judicial inquiry into the incidents that he asserts have already taken place.[11]

The court appreciates the cooperation and assistance of counsel for appellant, appellees, and for the amicus.

This opinion shall be released forthwith and in photocopy form.

---

**10.** Of course, we express no opinion on whether Bonner would be entitled to a writ of habeas corpus *ad testificandum* if and when he files a petition seeking this writ. As *Mitchum* directs, a determination of that issue must await the filing of the petition.

**11.** We are aware that district courts need to take "imaginative and innovative" steps in handling prisoner § 1983 cases. The volume is large yet "the number of these petitions found to have merit is very small, both proportionate-

ly and absolutely." *Report on the Study Group on the Caseload of the Supreme Court*, 57 F.R.D. 573 at 587 (1972) (the "Freund Report"). In fiscal 1979, of more than 10,000 such cases, 96.5% were dismissed or otherwise terminated prior to trial. *Annual Report of the Director of the Administrative Office of the United States Courts, 1979.* Suggested procedures are discussed in *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts*, Federal Judicial Center (1980).

AFFIRMED in part and REVERSED in part.