**NORTON TIRE CO., INC., a Florida corporation, Norton Pallot, Howard Katzen, Ronald Pallot, Steven Pallot, and Leonard Ross, Plaintiffs,**

v.

**TIRE KINGDOM CO., INC., a Florida Corporation, Charles Curcio, Jr., Walter Patterson, and Derrill Deramus, Defendants.**

No. 84–2978–Civ–ATKINS.

United States District Court,
S.D. Florida.

Nov. 22, 1985.

Charles Papy, Jr., Coral Gables, Fla., Norman Haft, L.H.S. Savola, Wicker, Smith, Blomquist, Tuton, O'Hara, Graham & Lane, P.A., Miami, Fla., Ronald Sales, West Palm Beach, Fla., Evan I. Fetterman, N. Palm Beach, Fla., for defendants.

Henry N. Adorno, Brian K. Goodkind, Bruce A. Katzen, Thomson Zeder Bohrer, Werth, Adorno & Razook, Miami, Fla., for Norton.

## ORDER GRANTING SANCTIONS

ATKINS, District Judge.

This cause is before the court on defendants' motion for attorney's fees. Defendants argue that they are entitled to this award based on two alternative grounds. First, they argue that plaintiffs' counsel failed to make a reasonable inquiry into the allegations regarding the antitrust claims of count II and count III as required by Rule 11 of the Federal Rules of Civil Procedure. Second, defendants request attorney's fees pursuant to section 542.22(1) of the Florida Statutes which provides that attorney's fees should be awarded when no justiciable issue of law or fact exists.

The court finds that plaintiffs' counsel failed to make a reasonable inquiry into the law and facts of the antitrust claims filed against defendants. The court also finds

that neither count II nor count III presents a justiciable issue of fact or law. Therefore, the court holds that defendants are entitled to an appropriate sanction as to count II, and may be entitled to reasonable attorney's fees as to count III.[1]

As a matter of introduction, the court is reluctant to impose sanctions or to award attorney's fees; however, after carefully examining this case, the award is justified. Plaintiffs' counsel failed to determine the significance of cases such as *Yoder Brothers, Inc. v. California-Florida Plant Corp.*, 537 F.2d 1347 (5th Cir.1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977) and to investigate the factual basis regarding the defendants' share of the market.

## RULE 11

Rule 11 of the Federal Rules of Civil Procedure requires:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Fed.R.Civ.P.* 11. The rule further provides that the court *shall* impose a proper sanction for violations of the rule.

The purpose of the rule is clear: · an attorney is required to review pleadings, motions, and other papers to determine whether the matter merits the expenditure of substantial litigation resources. With-

---

1. The court reserves ruling on the issue of whether Rule 11 preempts the state remedy until the parties have briefed this issue.

out this requirement, plaintiffs could harass defendants by quickly drafting frivolous motions and complaints which force the other party to hire attorneys who must research issues, and then challenge them in a manner that leads to the proper result. Using this strategy, plaintiff can win his war even though he may lose the battle. Plaintiff is victorious because his inexpensive action has resulted in a costly decision. However, the responding party is not the only victim, because the court has been forced to direct its attention away from more important matters.

While the purpose for the rule is clear, subsequent to its adoption, courts were exceedingly hesitant to award sanctions under it. Therefore, in 1983 the rule was amended to encourage the courts to impose sanctions more frequently. *Eastway Construction Corp. v. New York*, 762 F.2d 243, 253 (2d Cir.1985). *See generally Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985) (Judge Schwarzer's review of Rule 11). The new standard is one of reasonableness under the circumstances. 2A J. Moore W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 11.01[4]. Naturally, this standard requires an examination of the facts of a particular case and cannot be easily generalized. The sanction to be imposed is left to the discretion of the court. *Moore's Federal Practice* at ¶ 11.01[2]. In short, the court has been directed to consider carefully matters asserted without a proper foundation and impose sanctions, but the court has considerable discretion in fashioning the remedy. *Eastway Construction Corp.*, 762 F.2d at 254 n. 7.

## SECTION 542.22(1)

Count II of plaintiffs' complaint was based on Section 2 of the Sherman Act while count III was based upon Section 542.19 of the Florida Statutes. These sections describe nearly identical provisions concerning attempts to monopolize claims. Section 542.22(1) specifically provides that in this type of action, the plaintiff is entitled to threefold damages, costs, and attorney's fees. The section also provides that a prevailing defendant is entitled to reasonable attorney's fees if the claim failed to raise a justiciable issue of law or fact. Fla.Stat.Ann. § 542.22(1) (West.Supp.1985).

The court notes that this section is significant in at least one respect. While Rule 11 provides for extremely broad discretion by the court in fashioning a remedy, section 542.22(1) requires the award of reasonable attorney's fees. Thus, the court's discretion would be limited to a determination of what constitutes a "reasonable" fee.

## THE ANTITRUST CLAIMS

Plaintiffs commenced this law suit on December 21, 1984. In the nine count complaint, plaintiffs included two antitrust claims. Count II was patterned after federal law and count III was patterned after state law.

The parties agree that the plaintiff must prove three elements to establish the claim of attempted monopolization:

(1) anticompetitive conduct within the relevant market;

(2) defendants' intent to bring about a monopoly; and

(3) a dangerous probability of success.

*See, e.g., Yoder Brothers* at 1368. Moreover, plaintiffs have conceded at the time they filed their complaint, they were aware that the Fifth Circuit and most other circuits had established a strong majority opinion interpreting the "dangerous probability of success" element as requiring a showing of a substantial market share. *See id.* Plaintiffs now agree that they cannot demonstrate a substantial market share. Defendants assert that if the plaintiffs would have performed a reasonable inquiry into the facts of the case before filing their claims they would have realized that it was impossible for them to prove this element. Therefore, defendants argue that plaintiffs failed to comply with the directive of Rule 11, so defendants are entitled to an award under section 542.22(1).

### 1. *The Legal Issue:*

Plaintiffs' counsel appears to have misunderstood the significance of decisions like *Yoder Brothers*. During oral argument the court asked plaintiffs' counsel whether *Yoder Brothers* was a binding precedent for this court. Counsel responded, that it was not binding because he was free to persuade the court to adopt the reasoning of the Ninth Circuit. (The Ninth Circuit has established a minority interpretation of the "dangerous probability of success" element. *See, Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1095 (9th Cir.1982); *see also, Janich Brothers v. American Distilling Co.*, 570 F.2d 848 (9th Cir.1977), *cert. denied*, 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978)). Then the court asked whether *National Independent Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.*, 747 F.2d 1396 (11th Cir.1985) was binding precedent. Plaintiffs' counsel responded that it was, and that he realized that he could not ask the court to disregard the case and adopt the minority opinion. He stated he understood that even if the court believed that the minority opinion was better, the court would be constrained by precedent of the Eleventh Circuit and would have no choice but to dismiss the antitrust claims.

The problem with counsel's reasoning is that it fails to consider the effect of *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981). In that case, the Eleventh Circuit, *en banc*, had to determine what law would serve as precedent. The court, through Chief Judge Godbold, stated:

> We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.

*Id.* at 1207 (emphasis added).

*Bonner* clearly established that the decisions of the Fifth Circuit prior to the formation of the Eleventh Circuit were not merely persuasive authority entitled to the same weight as the decisions of other Circuits. Instead, these decisions became part of the Eleventh Circuit's case law. Therefore, the district court was compelled to follow the majority position which had been adopted by the Fifth Circuit. In short, had counsel examined *Bonner*, as required by Rule 11; he would have realized that no justiciable issue of law existed.

The court notes that as counsel was pressed on the significance of *Bonner*, he modified his argument and asserted that he is permitted to assert a claim even if the law is contrary to his position. This assertion is true. Normally, if an attorney finds that the law is wrong and should be altered, he is entitled to argue that the appropriate court should overrule the prior cases and adopt a new position. However, in this case, counsel seems to have considered this point only after defendants moved for sanctions. Counsel has never asserted that he considered the market share to be irrelevant because he intended to rely upon the minority position. In fact, part of his argument in opposition to defendants' motion for sanctions is that he thought he would be able to show that defendants held a sufficient share of the market. In short, this court has not found any indication that counsel initiated this action with an expressed intention to rely on the adoption of the Ninth Circuit's minority rule. This forced defendants to incur unnecessary cost in their presentation of a defense based largely on plaintiffs' inability to prove this element. Timely disclosure that plaintiffs were relying upon the Circuit's adoption of the minority position would have eliminated unnecessary research and discovery regarding the factual basis of this critical element.

### 2. *The Factual Issue:*

Defendants' market share was the critical factual issue of the antitrust claims. A review of the record reveals that the plaintiffs filed this action with no possibility of proving their claim. Defendants note that

plaintiffs' own survey of Broward County, a county that plaintiffs contend defendants attempted to monopolize, indicated that defendant Tire Kingdom had 4.9% share of the relevant market while plaintiffs' tire store had almost twice this share of the market. Plaintiffs' counsel responded to the motion for sanctions:

> No attempt to monopolize claim under the Sherman Act was included [in the original complaint] because it was believed Tire Kingdom did not have the market share necessary for Norton Tire to assert such a claim. Immediately prior to the filing of this action, Norton Tire and its counsel became aware of two facts which prompted them to include in the complaint a claim for attempting to monopolize. First, Norton Tire's counsel discovered the June 24, 1984, newspaper article ... which quoted Charles Curcio, president of the defendant Tire Kingdom ... as stating that Tire Kingdom, "has a 23% market share in Palm Beach County, the largest of any tire company." Second, legal research revealed the Ninth Circuit does not required a showing of substantial market to succeed on the attempt to monopolize claim and the Eleventh Circuit had yet to rule on the issue.

(Plaintiff Norton Tire's Memorandum of Law in opposition to Defendants' Motion for Sanctions and Attorney's Fees, pages 1–2, footnotes omitted.)

The court has already noted counsel's mistake in connection with his legal position, and will not elaborate further. However, this information was also factually inadequate to support a claim. In *Yoder Brothers*, the court specifically discussed a situation concerning an attempt to monopolize claim where the defendant had only about a 20% market share. The court explained, "In light of these factors, and Yoder's 20% market share, we hold that the district court properly ruled for Yoder on the attempted monopolization claim as well." *Id.* 537 F.2d 1369. Thus, counsel's discovery that defendant might have around 20% of the market share should not have induced him to file his claim. Instead, he should have realized that this information—4.9% in one county and 23% in another—indicated that the antitrust claims were not supported by the facts.

The court notes another factor supporting an award of sanctions. After hearing oral argument on defendants' motion for summary judgment on count II, the court ordered plaintiffs to file evidence of defendants' market share by August 1, 1985. In response, Norton Tire moved to have Count II voluntarily dismissed without prejudice. Plaintiffs' decision was based largely on their refusal to spend the funds necessary to obtain a market survey. They stated that a survey would have required several months and tens of thousands of dollars to complete.

Plaintiffs' action concerning this matter demonstrates its failure to make a reasonable inquiry into the factual basis for the claim. Plaintiffs certainly could have consulted an expert economist to determine the costs of a market survey. Then, if it appeared that the claim was reasonably strong, they could have invested the funds, hoping for a return from the law suit. Instead, plaintiffs realized that this claim was too weak to justify the expenditure of their valuable litigation resources. However, to them, the claim was more than sufficient to require defendants to research and conduct discovery on the issues and to require that the court hear oral arguments concerning these claims and read extensive memoranda regarding these issues.

Similarly, the court notes that even after plaintiffs decided not to conduct a market survey, they still attempted to have the action dismissed without prejudice. In response, defendants were forced to present memoranda discussing this action. The final result of the protracted litigation over this claim was that it was dismissed with prejudice upon plaintiff's request. Many months after filing the complaint, plaintiffs still had no evidence proving the relevant market share.

## CONCLUSION

The court has carefully considered the motion, memoranda, and the record. While

the court does not wish to discourage attorneys from filing meritorious actions, it is aware of its duty to prevent abuse. This case is a clear example of an action that failed to raise a justiciable issue of law or fact. The attorney would have realized this if he had made a reasonable inquiry into the factual and legal basis of the claim. By failing to make this inquiry, he violated the directive of Rule 11.

For the reasons expressed in this order, it is

ORDERED AND ADJUDGED that plaintiffs' counsel has violated Rule 11 and has failed to state a justiciable claim as to law and fact which entitles defendants to an award of sanctions, and may entitle them to an award for attorney's fees under section 542.22(1) of the Florida Statutes. Since defendants have already submitted their affidavits concerning attorney's fees, nothing further is required from them. Plaintiffs shall have ten days from the file stamp date of this order to submit counter-affidavits challenging the amount requested, the time involved, and stating the grounds for their challenge. In addition, plaintiff should address the issue of pre-emption under Rule 11. Specifically, does Rule 11 provide the exclusion remedy in this action, even though a pendent claim was filed pursuant to a state statute authorizing an award of attorney's fees in certain instances. Plaintiff should submit its memorandum along with its counter-affidavits. Defendant should file a response on the preemption issue within 10 days of receiving plaintiff's memorandum. No reply will be necessary.