**NORTON TIRE CO., INC., a Florida corporation, Plaintiff,**

v.

**TIRE KINGDOM CO., INC., a Florida corporation, Charles Curcio, Jr., Walter Patterson, and Derrill Deramus, Defendants.**

**No. 84–2978–Civ.**

United States District Court,
S.D. Florida.

April 9, 1987.

Thomson, Zeder, Bohrer Werth & Razook, Miami, Fla., for plaintiff.

Papy, Poole, Weissenborn & Papy, Coral Gables, Fla., for defendants.

**ORDER ON MOTION FOR RECONSIDERATION OF COURT'S AWARD OF SANCTIONS**

ATKINS, District Judge.

THIS CAUSE is before the court on plaintiff's motion for reconsideration of this court's order granting defendants' motion for sanctions, 108 F.R.D. 371. I have carefully considered the motion, memoranda, the record, and counsels' oral arguments. In addition, I have examined several recent cases examining the scope of Rule 11. I conclude that the order granting sanctions should be vacated, and defendants' motion for sanctions should be denied. IT IS SO ORDERED.

## I. BACKGROUND INFORMATION

On December 31, 1984, plaintiff, Norton Tire, filed a nine count complaint against Tire Kingdom. In count II, paragraph 44, plaintiff specifically alleged that Tire Kingdom had "knowingly and intentionally vio-

lated § 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to monopolize the independent retail tire markets of both Broward and Palm Beach Counties." Similarly, in count III plaintiff alleged that "Defendants have attempted to monopolize commerce in violation of the Florida Antitrust Act of 1980, *Florida Statutes*, Section 542.19."

Ultimately, both of the antitrust counts were dismissed with prejudice because plaintiff determined that it was not feasible to obtain accurate market surveys for Broward and Palm Beach counties and that it did not intend to refile its antitrust claims. Defendants then sought sanctions, including reasonable attorney's fees, against plaintiff for filing its frivolous antitrust suits. After reviewing the motion for sanctions and memoranda pertaining to it, and having considered counsels' oral arguments, I entered an order granting sanctions.[1] The basis for the holding was that plaintiff's counsel had violated Rule 11 of the *Federal Rules of Civil Procedure* and Section 542.22(1) of the *Florida Statutes* since a reasonable inquiry would have disclosed that the antitrust claims failed to present any justiciable issue of fact or law.

## II. THE BASIS FOR PLAINTIFF'S ANTITRUST CLAIMS

### A. *Facts Under the Majority Rule*

In the Eleventh Circuit, a plaintiff must prove three elements to establish defendant's attempt to monopolize in violation of Section 2 of the Sherman Act. First, plaintiff must prove that defendant committed overt acts of anticompetitive conduct. *See*

*Swift & Co. v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905). Second, plaintiff must demonstrate that defendant acted with the specific intent to achieve monopoly power. *See Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). Finally, plaintiff must show that defendant has a dangerous probability of success. *See Swift & Co.* at 396, 25 S.Ct. at 279.

The present dispute concerns the third element of the alleged offense—defendants' probability of success.[2] To satisfy this element, plaintiff must provide proof of defendants' market power.[3] Proof of defendants' share of the relevant market is the most obvious and widely used evidence of market power, but there is no recognized minimum requirement.

In the case *sub judice*, plaintiff had two sources of information regarding defendants' market share. First, plaintiff's own survey of December 20, 1983 showed that it controlled almost 10% of the market in Broward County while Tire Kingdom controlled less than 5% of the same market. Second, "immediately prior to the filing of this action, Norton Tire became aware of ... the June 20, 1984, newspaper article ... stating that Tire Kingdom's market share in Palm Beach County was 23%."[4] Docket Number 206. In addition to this evidence, plaintiff knew (or would have known after making a reasonable inquiry into the matter) that Tire Kingdom was expanding rapidly in these markets. Of course, plaintiff also knew that the retail tire industry is fiercely competitive and has low barriers to entry.[5]

---

1. I did not determine the amount of the award at that time. Defendants submitted an itemized account and an affidavit indicating that the appropriate award would be about $316,000. Plaintiff submitted a counter-affidavit indicating that the award could not exceed $27,000.

2. Defendants did not challenge the anticompetitive nature of the alleged conduct. Similarly, they did not challenge the issue regarding specific intent.

3. In fact, plaintiff conceded that in "all circuits, except the Ninth, this element [dangerous probability of success] generally is linked to a show-

ing of substantial market share (35–50%)." Docket Number 206 n. 1. The Ninth Circuit, however, allows plaintiff to prove this element based upon reasonable inferences derived from proof of defendant's intent. *See, e.g., Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1059 (9th Cir.1982).

4. A copy of this article is attached as Court Appendix I.

5. In fact, according to the June 20 newspaper article, Chuck Curcio, president of Tire Kingdom, started his successful business enterprise

### B. *Facts Under the Minority Rule*

The Ninth Circuit requires proof regarding defendant's dangerous probability of success in an attempt to monopolize claim; however, it permits this element to be inferred from proof of intent to monopolize. Proof of intent, in turn, may be inferred from the nature of the anticompetitive conduct. Thus, under the minority approach, plaintiff can prove an attempt to monopolize claim without offering evidence regarding defendant's market share provided the anticompetitive conduct is "of a kind clearly threatening to competition or clearly exclusionary." *Forro Precision, Inc. v. IBM,* 673 F.2d 1045, 1059 (9th Cir.1982).

### III. DISCUSSION

### A. *The Reason for Safeguards*

Rule 11 and Florida Statute § 542.22(1) were implemented to prevent the filing of spurious law suits since substantial financial resources may be squandered. Without these safeguards, plaintiffs could use frivolous actions to harass innocent defendants. In this manner, a plaintiff could achieve a competitive business victory over a defendant although it loses its legal battle. However, the defendant is not the only victim of plaintiff's meritless action. Other parties suffer because the court has been forced to direct its attention away from more significant disputes. Thus, the court has a serious duty to monitor those actions placed before it.

### B. *Plaintiff's Position*

Plaintiff contends that its complaint was soundly based in law and fact when it was filed. In addition, it contends that it was entitled to rely on an alternative theory. Specifically, plaintiff asserts that it was entitled to rely upon the modification or reversal of existing law by persuading the Eleventh Circuit to follow Ninth Circuit precedent and infer the dangerous probability of success from defendants' anticompetitive conduct.

by selling tires from the back of a truck. (Court

Under the majority rule, plaintiff states that it had obtained a newspaper article indicating that defendant controlled 23% of all retail tire sales in Palm Beach County. Moreover, plaintiff emphasizes that the complaint alleged an intent to monopolize the *independent retail tire* market which excludes the manufacturer-owned stores and the department store chains. Had this court accepted plaintiff's position, defendant would have had a much greater market share. Finally, plaintiff asserts that Tire Kingdom exhibited a strong trend of rapid growth.

### C. *Defendants' Position*

Defendants vehemently oppose plaintiff's motion for reconsideration. First, defendants contend that plaintiff should not have filed a $12 million antitrust suit based solely on an unsubstantiated newspaper article. Second, defendants urge that plaintiff violated Rule 11 by filing the antitrust claims for an "improper purpose." Third, defendants assert that plaintiff misrepresented and/or failed to disclose its theories to the court. Fourth, defendants suggest that plaintiff should not have expected the court to accept its narrow market definition. Finally, defendants emphasize plaintiff's allegation that Tire Kingdom was attempting to monopolize Broward County despite plaintiff's own evidence indicating that defendants controlled only 4.9% of this market.

### D. *Rule 11 Application*

Rule 11 requires an attorney to read the paper being submitted to the court and certify (by his signature) that based upon a reasonable inquiry the document is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose. *Fed.R.Civ.P.* 11. Here, defendants assert that plaintiff filed the claims for an improper purpose and failed to conduct a reasonable inquiry into the facts and law regarding these claims.

Appendix I.)

However, after carefully considering the relevant legal principles and applying them to the facts at hand, I find that Rule 11 was not violated.

Defendants have pointed out various factors which support its assertion that the antitrust claims were filed for an improper purpose. However after considering all of the circumstances involved in this case, I believe that plaintiff's counsel's conduct was a manifestation of his extremely aggressive tactics in zealously representing his client. Moreover, I am hesitant to infer that an attorney has filed a document for an improper purpose without compelling evidence of this fact. *See Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (the court should resolve all doubts in favor of the signer).

Defendants' other contentions concern whether plaintiff's counsel made a reasonable inquiry into the law and facts. Specifically, defendants contend that plaintiff should have known that its claim that defendants were attempting to monopolize Broward County was extremely tenuous since its own survey indicated that Tire Kingdom controlled less than 5% of this market.[6] Similarly, plaintiff's claim regarding Palm Beach was based upon an unsubstantiated "rags to riches" newspaper article where the stated figure was only 23%. A 23% market share in an industry having low barriers to entry and being fiercely competitive does not establish a strong claim. *See, e.g., Yoder Brothers, Inc. v. California-Florida Plant Corp.*, 537 F.2d 1347 (5th Cir.1976), *cert. denied*,

429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977). Yet, in his affidavit, plaintiff's counsel indicates that he filed the claim hoping that the market would be narrowly defined and that discovery would produce evidence showing that Tire Kingdom had a sufficient market share, but knowing that he could always rely upon the minority rule as a "fall back" position. Defendants suggest that this practice is unfair, and I originally indicated that it seemed incredible.

In its memorandum supporting the motion to reconsider, plaintiff noted my concern over counsel's apparent lack of candor with respect to the dangerous probability of success issue and has now conceded that its prior counsel were sometimes less than clear—and perhaps less than timely—in explaining these theories to the defendants and to this court. Nevertheless, plaintiff maintains that the errors of plaintiff's counsel in not explaining adequately to this court the basis for these claims and reasons for their subsequent dismissal should not subject plaintiff to sanctions.[7]

The "duty of candor" appears to be defined by three recent cases. First, in *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986), the Ninth Circuit reversed the trial court's order imposing sanctions pursuant to Rule 11.[8] In that case, as in this one, counsel failed to indicate that his legal theory was based upon a good faith argument for the extension, modification, or reversal of existing law. *Id.* at 1535. The Ninth Circuit reviewed the district court's requirement of

---

6. The 5% figure is particularly significant. In Von Kalinowski's treatise on antitrust provisions he gives examples of conduct sufficient to support an attempt to monopolize claim. One example assumes facts that would support a claim except that the corporation's market share is reduced from 40% to only 5%. With all other facts remaining constant, Von Kalinowski concludes that the claim would not succeed. "Here, it is quite unlikely that a court will find X guilty of an attempt to monopolize under Section 2. Obviously, it does not possess sufficient market control to pose any serious threat of acquiring a monopoly." 3 Von Kalinowski, *Antitrust Laws and Trade Regulation*, § 9.01[2][a].

7. I note that subsequent to my order granting sanctions, the memoranda submitted jointly by the Thomson, Zeder firm and its counsel from Wilmer, Cutler & Pickering have been excellent. Significantly, several relevant antitrust cases have been cited and discussed which were previously ignored.

8. The district court's decision is published at 103 F.R.D. 124 (N.D.Cal.1984). This decision is similar to my order which is reported at 108 F.R.D. 371 (1985). *See* Comment, *Ask Questions First and Shoot Later: Constraining Frivolity in Litigation Under Rule 11*, 40 U.Miami L.Rev. 1267, 1291 n. 148 (1986).

"argument identification" (a requirement that counsel specifically indicate whether a document is warranted by existing law or is based upon a good faith argument for the extension, modification, or reversal of existing law) and reversed the order granting sanctions because the rule does not suggest such a requirement. *Id.* at 1539–40.[9] Furthermore, Rule 11 does not impose any continuing duty on an attorney after he signs and files his claim. *See Oliveri* at 1274. Combining these principles, I conclude that counsel was entitled to file his antitrust claims hoping for a favorable legal ruling concerning the market definition and hoping that discovery would support his claim, since he could also rely upon a good faith legal argument that would render it unnecessary to prove a specific market share.

One final case regarding the "duty of candor" merits discussion. In *Blackwell v. Department of Offender Rehabilitation,* 807 F.2d 914 (11th Cir.1987) (as corrected), the Eleventh Circuit explicitly adopted a "duty of factual candor." *Id.,* at 915. However, the court did not attempt to reconcile its holding with *Golden Eagle.* Apparently, the court felt that no discussion was necessary because *Blackwell* concerned factual candor while *Golden Eagle* concerned legal candor. In this order, I have attempted to reconcile these two cases, and have concluded that *Blackwell* does not control the present controversy.

### E. *Section 542.22(1)*

Although the parties have performed exhaustive research, they have produced no case on point with respect to sanctions under Florida Statute § 542.22(1). After carefully considering this issue, I cannot find that "there was a complete absence of a justiciable issue of either law or fact." *Id.* Thus, an award of reasonable attorney's fees is not justified. Under the facts of this case, I believe that the Rule 11 standard is the same as for § 542.22(1). To permit growth and change in our legal principles, an attorney must be able to present a case where there is a reasonable argument for the modification or reversal of existing law.

### IV. CONCLUSION

Rule 11 continues to be a necessary evil. As the costs of litigation have increased, there has been an overwhelming demand that the courts monitor and prevent frivolous litigation. *See* Comment, *Ask Questions First and Shoot Later: Constraining Frivolity in Litigation Under Rule 11,* 40 U. Miami L.Rev. 1267, 1268 (1986). Yet, the parameters of Rule 11 continue to be unclear as the courts strive to find acceptable methods of preventing frivolous litigation without prohibiting zealous representation under novel circumstances and through innovative reasoning.

I have reviewed the cases discussing Rule 11 and the antitrust claims, and have determined that sanctions are not warranted. Nevertheless, I continue to believe that counsel should always be prepared to articulate the factual and legal basis for any document they sign, even if that information cannot be disclosed until after an

---

**9.** I believe that the case *sub judice* presents a more compelling basis for imposing a "duty of candor" than *Golden Eagle.* In *Golden Eagle* the issue was whether counsel had to identify and disclose his legal position while the issue was "live." Here, the question presented was whether counsel ever had a duty to articulate the basis for his claim!

For example, in *Golden Eagle* the trial court asked counsel "to submit a memorandum explaining why sanctions should not be imposed under Rule 11." *Id.* at 124. In that memorandum, the court found that counsel articulated "the argument they sought to present ... with exemplary clarity and fairness." *Id.* at 126.

Nevertheless, he imposed sanctions because counsel had not been completely candid in submitting his original document. Here, the antitrust claims had been dismissed with prejudice. Yet, at the hearing on sanctions, counsel did not articulate the basis for his argument with exemplary clarity and fairness. Thus, in my case, I did not require complete disclosure while the claims were pending, just an explanation regarding the basis for these claims once they were resolved. If an attorney cannot articulate the basis for his claim a year after filing it, one might infer that he never adequately inquired into the matter.

issue has been resolved. Counsel's clear and concise statement regarding the factual and legal basis for his position remains the best evidence that he has adequately investigated the facts and researched the law supporting the signed legal document.

242

PostThe Post

Shan Gordon/THE POST

**Chuck Curcio dons cloak and crown for his television advertisements**

# For Founder of Tire Kingdom, Success Means Aggressiveness

**By Dave Gourevitch**

Staff Writer

Chuck Curcio remembers it well: In 1972, he arrived in Florida with no money and no job. "I'd scoop my hand in my pocket, and there was nothing," he recalled.

Today, more than a decade later, Curcio is president and owner of Tire Kingdom, a 34-store chain with sales of $30 million.

"What do I attribute the success?" Curcio asked. "Aggressive advertising."

His ads are nothing if not aggressive. One shows Curcio loudly touting Tire Kingdom dressed in a cape and crown. Another portrays him fishing tires from a boat and being pulled into the water by his "catch."

But Curcio hasn't always cast such a happy-go-lucky image. One of seven children, he grew up in Philadelphia. His mother waitressed after his father abandoned the family when Curcio was 11. Curcio dropped out of high school in his senior year, joined the Marines and went to Vietnam, where he won a Purple Heart.

Back in the United States, Curcio finished high school and studied accounting in community college. At age 23, he moved to Florida and started selling tires from the back of a truck at the Farmer's Market. Business was slow, and sometimes a week passed between sales.

"Three times, I almost quit," Curcio recalled.

His luck turned after he bought tire-changing equipment with a $500 loan. Business picked up as car owners discovered that Curcio sold his tires cheaply. He parlayed his small tire business into a discount chain with nine stores in Palm Beach County and 25 elsewhere in South Florida. He attributes his success at discounting to his success at buying tires cheap.

"Tire buying is an art," he said. You have to know how to get good deals from the manufacturers. "You have to know when they're loaded with tires and you can squeeze a deal."

Tire Kingdom is expected to earn $40 million this year, up almost a third from a year ago. It has a 23 percent market share in Palm Beach County, the largest of any tire company.

Two years ago, Tire Kingdom hired mechanics, added garages and began offering car repairs as well as tires. Curcio said, "It's the reason we make money today."