858 F.2d 1533
 1988-2 Trade Cases 68,306, 12 Fed.R.Serv.3d 803,
9 U.S.P.Q.2d 1407
 NORTON TIRE COMPANY, INC., a Florida Corporation, Plaintiff-Appellant,
v.
TIRE KINGDOM COMPANY, INC., a Florida Corporation, Charles
Curcio, Jr., Walter Patterson, Derrill DeRamus,
Defendants-Appellees.
NORTON TIRE CO., INC., a Florida Corporation, Plaintiff-Appellee,
v.
TIRE KINGDOM COMPANY, INC., a Florida Corporation, Charles
P. Curcio, Jr., Walter Patterson, Derrill DeRamus,
Defendants-Appellants.
 Nos. 87-5100, 87-5381.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 1, 1988.
 
 Parker D. Thomson, Sanford L. Bohrer, Thomson, Zeder, Bohrer, Werth & Razook, Miami, Fla., Deanne C. Siemer, Wilmer, Cutler & Pickering, Washington, D.C., for plaintiff-appellant.
 Sheridan Weissenborn, Papy, Weissenborn & Papy, Coral Gables, Fla., for defendants-appellees.
 David Rees Davies, Hunton & Williams, New York City, for Tire Kingdom.
 Appeals from the United States District Court for the Southern District of Florida.
 Before TJOFLAT and HILL, Circuit Judges, and WARD*, District judge.
 TJOFLAT, Circuit Judge:
 
 I.
 
 1
 Norton Tire Co. (Norton) and Tire Kingdom Co. (Tire Kingdom) are competitors in the retail automobile tire trade. Norton's sales consist primarily of name brand tires made by B.F. Goodrich, Michelin, and Pirelli. Tire Kingdom also carries name brand tires, but it concentrates on selling private brand tires, which have a higher profit margin. Tire Kingdom sets low prices on its name brand tires and advertises these prices extensively to lure customers into its stores; salesmen then try to convince the customer to buy private brand tires instead. Low inventory levels of the advertised name brand tires aid this "bait and switch" method of selling; nevertheless, an insistent customer, who is willing to wait, can eventually purchase the advertised name brand tires at the advertised price.
 
 
 2
 In December 1984, Norton brought suit against Tire Kingdom alleging that Tire Kingdom's "bait and switch" sales method violated the Lanham Act, 15 U.S.C. Sec. 1125(a) (1982); the Federal Trade Commission Act, id. Sec. 45 (1982 & Supp. IV 1986); the Sherman Act, id. Secs. 1, 2 (1982); the Robinson-Patman Anti-Discrimination Act, id. Secs. 13(a), 13a; the National Traffic & Motor Vehicle Safety Act, id. Sec. 1392, and various Florida laws and regulations.[1] Norton's complaint requested both money damages and injunctive relief. Tire Kingdom denied the allegations and made several counterclaims. Except for the Lanham Act claim, all of Norton's claims and Tire Kingdom's counterclaims were resolved before trial.
 
 
 3
 The Lanham Act claim went to trial before the district court in the spring of 1986. The district court handed down its findings of fact and conclusions of law following the trial, concluding that Norton failed to prove an essential element of its claim: that Tire Kingdom's advertisements were false. The court therefore denied Norton's requests for relief. Norton challenges this ruling in appeal No. 87-5100.
 
 
 4
 Prior to the trial of Norton's Lanham Act claim, Tire Kingdom moved the court under Fed.R.Civ.P. 11 to impose sanctions, contending that Norton's antitrust claim had been brought by Norton's attorney solely to harass Tire Kingdom. The district court held hearings on Tire Kingdom's motion and found Norton liable; however, the court reserved the imposition of sanction pending the resolution of certain issues that are no longer relevant. After the conclusion of the trial on Norton's Lanham Act claim, the district court asked the parties for supplemental briefs on the Rule 11 issues. Following a series of comprehensive hearings, the court vacated its initial Rule 11 order, finding that Norton's "counsel's conduct was a manifestation of his extremely aggressive tactics in zealously representing his client." Norton Tire Co., Inc. v. Tire Kingdom Co., Inc. 116 F.R.D. 236, 239 (S.D.Fla.1987). Tire Kingdom challenges this ruling in appeal No. 87-5381.
 
 II.
 
 5
 Section 43(a) of the Lanham Act provides that:
 
 
 6
 Any person who shall ... use in connection with any goods or services ... any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
 
 
 7
 15 U.S.C. Sec. 1125(a) (1982). To establish a claim under section 43(a) for false advertising, Norton first had to establish that Tire Kingdom's advertisements contained false representations. See Skil Corp. v. Rockwell Int'l Corp., 375 F.Supp. 777, 782-83 (N.D.Ill.1974). The district court concluded that Tire Kingdom's advertisements made no false representations. We agree.
 
 
 8
 Tire Kingdom's advertisements offered to sell certain brand name tires at a specified price. These advertisements often contained specific disclaimers warning consumers that because of space limitations some stores might not stock all sizes of all tires; many of the advertisements therefore suggested that customers call to check availability before visiting a store. Customers who wished to purchase the advertised name brand tires were eventually able to do so. Ultimately, Norton claims that because Tire Kingdom dissuaded customers from purchasing the advertised name brand tires and instead encouraged them to purchase private brand tires, Tire Kingdom's advertisements were false. While Tire Kingdom's sales tactics may have constituted sharp practice, they are not false representations under section 43(a) of the Lanham Act. We accordingly affirm the district court's judgment in appeal No. 87-5100.
 
 III.
 
 9
 In moving for sanctions under Rule 11, Tire Kingdom argued that Norton's antitrust claim was baseless. Norton's antitrust claim alleged that Tire Kingdom was attempting to monopolize the independent retail tire market, thereby violating section 2 of the Sherman Act. To establish a section 2 violation, a plaintiff must show (1) an intent to bring about a monopoly and (2) a dangerous probability of success. See Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518 (1905). This second element is proven by showing that the defendant controls a large share of the relevant market.
 
 
 10
 When Norton filed its complaint, it had knowledge of two market surveys concerning areas of Florida in which Norton and Tire Kingdom competed. The first of these indicated that Tire Kingdom controlled less than five percent of the Broward County retail tire market; the second, a newspaper article, estimated that Tire Kingdom controlled twenty-three percent of the Palm Beach retail tire market. In Yoder Bros. v. California-Florida Plant Corp., 537 F.2d 1347 (5th Cir.1976), cert. denied, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977),[2] we examined a similar situation and concluded that a twenty percent share of a fiercely competitive market with low entry barriers was not sufficient to establish a dangerous probability of monopolistic success.
 
 
 11
 In response to the Rule 11 motion, Norton advanced two bases for its antitrust claim. First, Norton argued that the two surveys, which analyzed the retail tire market as a whole, did not preclude a successful showing of monopolistic intent as to the independent retail tire market, i.e., the retail market excluding manufacturer's outlets and department stores. Thus, by redefining the relevant market, Norton hoped to establish a legitimate section 2 claim. Second, Norton argued that its evidence could be legally sufficient to establish a section 2 claim under a minority view that allows dangerous probability of monopolistic success to be based on reasonable inferences from the defendant's proven intent. See Forro Precision, Inc. v. IBM, 673 F.2d 1045, 1059 (9th Cir.1982). This circuit has rejected this approach. See Yoder Bros., 537 F.2d at 1366-69.
 
 
 12
 Federal Rule of Civil Procedure 11 provides that:
 
 
 13
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
 
 
 14
 In Donaldson v. Clark, 819 F.2d 1551 (11th Cir.1987) (en banc), we held that the Rule establishes an objective standard of " 'reasonableness under the circumstances.' " Id. at 1556 (quoting Advisory Committee Note to Rule 11). Donaldson also established the standard for appellate review of Rule 11 decisions:
 
 
 15
 Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion; on the other hand, a decision whether a pleading or motion is legally sufficient involves a question of law subject to de novo review by this court.
 
 
 16
 Id. (footnote omitted). This standard evinces a clear policy to leave resolution of Rule 11 matters primarily in the hands of the trial judge, who by virtue of his close contact with the parties is best able to determine the propriety of sanctions. Although binding precedent plainly foreclosed Norton's antitrust claim, we are unable to say that the trial judge abused his discretion by refusing to impose Rule 11 sanctions in this case. We therefore affirm the district court's denial of Rule 11 sanctions in appeal No. 87-5381.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Horace T. Ward, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 These included the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat. Sec. 501.201-.213 (1987); id. Sec. 817.41 (Misleading Advertising); id. Sec. 817.44 (Intentional False Advertising); id. Sec. 817.411 (False Information); the Florida Racketeer Influenced and Corrupt Organization Act, id. Sec. 895.01-.09; the Florida Antitrust Act of 1980, id. Sec. 542.15-. 36; the Florida Motor Vehicle Repair Act, id. Sec. 559.901-.923; id. Sec. 634.011-.271 (Motor Vehicle Service Agreement Companies); Fla.Admin.Code Ann. r. 2-9 (1986) (Advertising and Sales); id. r. 2-19 (Motor Vehicles, Sales, Repairs, Maintenance and Service)
 
 
 [2]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981