**DRIVER LOGISTICS SERVICE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 6:00CV840–ORL–JGG.**

United States District Court, M.D. Florida, Orlando Division.

March 12, 2002.

Charles W. Sell, Christine Noworyta Smith, Gray, Harris & Robinson, P.A., Orlando, FL, I. William Spivey, II, Greenberg Traurig, P.A., Orlando, FL, for Driver Logistics Service, Inc., plaintiff.

Ann Reid, U.S. Dept. of Justice, Tax Division, Washington, DC, for United States of America, defendant.

*ORDER*

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on January 23, 2002 on the following motion:

> **MOTION: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 31)**
>
> **FILED:** November 1, 2001
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

## I. *THE FACTS*

Before January 1, 1996, Rodney Keenan owned one hundred percent of the shares of three truck driver leasing corporations, and also served as director and president of each corporation. Keenen's three corporations were: Southern Driving Leasing, Inc., a Florida corporation with its principal place of business in Florida ["Southern"]; Northeast Driver Leasing, Inc., a Massachusetts corporation with its principal place of business in Massachusetts ["Northeast"]; and DLS East, Inc., a Massachusetts corporation with its principal place of business not specified ["East"]. Keenan's three corporations, Southern, Northeast, and East generated employment tax liabilities (FICA) and federal unemployment tax liabilities (FUTA) in 1993 and 1994.

Pursuant to two stock purchase merger agreements effective January 1, 1996, the three corporations dissolved, ceased to ex-

ist without winding down, and merged into a successor corporation. The successor corporation is plaintiff Driver Logistics Service, Inc., a Delaware corporation with its principal place of business in Florida ["DLS"], which continued in the truck driver leasing business. After January 1, 1996, Rodney Keenan owned one hundred percent of the shares of DLS, and also served as director and president of the successor corporation.

The Internal Revenue Service ("IRS") sought to collect the predecessor corporations' 1993 and 1994 FICA and FUTA taxes from the successor corporation, DLS. The IRS therefore made transferee assessments against DLS pursuant to 26 U.S.C. § 6901(a)(2). Following a collection due process hearing, the IRS determined that the transferee assessments were valid. Pursuant to 26 U.S.C. §§ 6320 and 6330, plaintiff DLS appeals that determination. The total amount of tax and interest at issue calculated to June 30, 2001, is $2,894,262.44.[1]

## II. THE ISSUES

In the complaint, DLS seeks a declaratory judgment that the taxes at issue cannot be lawfully assessed against DLS and collected from DLS. DLS claims that it is not a transferee, and that the assessments are untimely because the consents executed to extend the statute of limitations are invalid. Specifically, DLS maintains that the consent forms are invalid because they were executed by the corporations that generated the tax liabilities after the cor-

porations had ceased to exist as separate entities. The United States argues that the transferee assessments are valid as a matter of law, and that DLS is estopped from arguing that the consents are invalid. The government's motion for partial summary judgment [Docket No. 31] seeks a determination that 1.) the transferee assessments were proper; and 2.) the 1994 FICA tax assessment was made within the applicable statute of limitations.

## III. THE APPLICATION AND ANALYSIS

With respect to each assessment, the Court finds that the DLS is a transferee under 26 U.S.C. § 6901. Pursuant to the corporate laws of Delaware (Del.Code Ann. tit. 8 § 259), Florida (Fla.Stat.Ann. § 607.1106), and Massachusetts (Mass. Gen. Laws Ann. ch. 156B § 80), the corporation that survives following a merger has primary liability for the predecessor entities' liabilities and obligations. Upon the mergers effective January 1, 1996, DLS assumed all of the liabilities of Southern, Northeast, and East, including the 1993 and 1994 FICA and FUTA tax liabilities.

Pursuant to 26 U.S.C. § 6901, DLS is a transferee under federal law as defined by 26 U.S.C. § 6901(h). In accordance with Treas. Reg. § 301.6901(b), a transferee includes a successor to a corporation and a party to a reorganization. The case of *Southern Pacific Transportation Company v. Commissioner*, 84 T.C.

1. There are a total of 26 periods for which transferee assessments were made on April 1, 1999. The amount of the assessments is not in dispute. The tax liabilities reflected for each period are exclusive of interest: FICA (Southern)—9303 ($138,236.90), 9306 ($136,086.12), 9309 ($166,830.22), 9312 ($168,099.11), 9403 ($221,777.87), 9406 ($246,644.99), 9409 ($237,345.61), and 9412 ($204,029.93); FUTA (Southern) 9312 ($21,-052.78) and 9412 ($31,546.72); FICA (Northeast)–9303 ($35,329.65), 9306 ($52,043.90), 9309 ($67,587.65), 9312 ($70,744.71), 9406 ($77,551.84), 9409 ($85,775.79), and 9412 ($82,865.11); FUTA (Northeast) 9312 ($7,803.78) and 9412 ($5,838.65); FICA (East)9312 ($64,665.81), 9403 ($88,964.33), 9406 ($76,371.90), 9409 ($89,153.91), 9412 ($65,634.22); FUTA (East)—9312 ($16,-479.59) and 9412 ($6,420).

387, 1985 WL 15321 (1985) is controlling. In *Southern Pacific*, the United States Tax Court held that the successor corporation in a merger was liable as a transferee for the merger corporation's tax deficiencies where the successor contractually obligated itself under the merger agreement to pay the liabilities of the former corporation. 84 T.C. at 394, 1985 WL 15321. The Court also relies on *Turnbull, Inc. v. Commissioner*, 373 F.2d 91 (5th Cir.1967).[2] In *Turnbull*, the United States Court of Appeals for the Fifth Circuit held that the successor in a merger was liable as a transferee for the merged corporation's tax deficiencies where the successor obligated itself under the merger agreement and under a transfer agreement (Form 2045) to pay the liabilities of its predecessor, notwithstanding the fact that the pertinent state merger laws imposed primary liability on the successor. 373 F.2d at 94.

DLS argues that the merger agreements are different from the contracts at issue in the cases relied on by the Court. In fact, there is no material difference between the contracts. Both merger contracts state that DLS shall assume all of the liabilities of Southern, Northeast, and East. Under the terms of these merger agreements, on January 1, 1996 DLS became liable for all liabilities of the predecessor entities. The transaction was effected by stock purchase agreement. Thus, DLS became liable as a matter of law for all of the liabilities of Southern, Northeast, and East as of January 1, 1996.

Pursuant to 26 U.S.C. § 6501(a), the statute of limitations on assessment is three years from the date the return is filed. Pursuant to 26 U.S.C. § 6501(c)(4), the statute of limitations may be extended by written agreement. FICA tax returns must be filed every calendar quarter and are due on the last day of the first month following the quarter. Treas. Reg. § 31.6071(a)–1(a). FUTA tax returns are due January 31 of the year following the period for which it is made. Treas. Reg. § 31.6071(a)–1(c). A FICA return filed before April 15 of the succeeding year is deemed filed on April 15 of such year. 26 U.S.C. § 6501(b)(2). A FUTA return filed before the due date is deemed filed as of the due date of the return. 26 U.S.C. § 6501(b)(1).

Southern, Northeast, and East's 1994 FICA tax returns were due to be filed on April 15, 1995. Absent an extension, the statute of limitations on assessment would have expired on April 15, 1998. In this case, however, the IRS made assessments against DLS pursuant to Section 6901(a)(2) as a transferee of the three original taxpayer corporations. Section 6901(c) provides a different statute of limitations for transferee assessments. Section 6901(c) provides that an assessment may be made against an original transferee, such as DLS, "within 1 year after the expiration of the period of limitation for assessment against the transferor." 26 U.S.C. § 6901(c).

As set forth above, the statute of limitations for assessment against the original corporations of the 1994 FICA taxes would have expired—absent the consents to extend the statute—on April 15, 1998. One calendar year after April 15, 1998 is April 15, 1999. The IRS made the transferee assessments against DLS on April 1, 1999, "within 1 year after the expiration of the period of limitation for assessment against the transferor[s]" (the original corporations). Thus, the 1994 FICA assessments were timely without regard to the validity of the consents extending the statute of

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

limitations against the original corporations.

■ The timeliness of the remaining assessments depends on the validity of the written consents to extend the statute of limitations on assessment. The issue of the validity of the consents was not sufficiently raised in the Government's motion, and is not properly before the Court. The Government's motion is denied with respect to this issue.

## IV. *CONCLUSION*

Accordingly, it is **ORDERED** that the United States's Motion for Partial Summary Judgment [Docket No. 31] is **GRANTED** with respect to the timeliness of the 1994 FICA assessments. It is

**FURTHER ORDERED** that the United States's Motion for Partial Summary Judgment [Docket No. 31] is **GRANTED** with respect to the 1994 FICA transferee assessments against Driver Logistic Service, Inc. It is

**FURTHER ORDERED** that the United States's Motion for Partial Summary Judgment [Docket No. 31] is **GRANTED** with respect to Driver Logistic Service, Inc. as a transferee pursuant to 26 U.S.C. § 6901. It is

**FURTHER ORDERED** that the motion for partial summary judgment is **DENIED** with respect to the timeliness of the following assessments: 1993 FUTA, 1994 FUTA, and 1993 FICA. It is

**FURTHER ORDERED** that pursuant to the agreement of counsel, Driver Logistic Service, Inc. and the United States shall file and serve an amended joint pre-trial statement. The amended joint pre-trial statement shall include a section concerning the law applicable to the validity of the consents. If the parties cannot agree on the applicable law, the parties shall file and serve briefs on the issue of the law applicable to determining the validity of the consents to extend the statute of limitations on assessment.