[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 12, 2012
JOHN LEY
CLERK

No. 11-11218
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cr-00075-JES-SPC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON BERGIN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 12, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Jason Bergin appeals his conviction for conspiracy to possess with intent to distribute Oxycodone, Methadone, and Alprazolam. On appeal, Bergin argues that his motion to suppress should have been granted because: (1) the magistrate and district court clearly erred by crediting the testimony of Deputy Christopher Canfield over that of co-defendant Robert Powner; and (2) the post-indictment and arrest statements and testimony of his co-defendants were not sufficiently attenuated from an illegal search. After thorough review, we affirm.[1]

"A district court's ruling on a motion to suppress presents mixed questions of law and fact." United States v. Ramirez-Chilel, 289 F.3d 744, 748-49 (11th Cir. 2002). We review "findings of fact for clear error and the application of the law to those facts de novo." United States v. Martinelli, 454 F.3d 1300, 1306 (11th Cir. 2006). In reviewing the district court's ruling, we construe the facts in the light most favorable to the prevailing party below. United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).

First, the district court did not clearly err in considering the testimony at the motion to suppress hearing. Credibility determinations are within the province of the fact finder "because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."

---

[1] In addition, we GRANT Bergin's motion to supplement the record.

Ramirez-Chilel, 289 F.3d at 749. Furthermore, if testimony presented by opposing witnesses at the hearing is in "direct conflict," the district court's decision to lend credence to one party's version should be "conclusive" and warrants reversal only if the court credits "exceedingly improbable" or unbelievable testimony. Id. (quotations and emphasis omitted). Likewise, we "must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." Id. (quotation omitted).

On this record, the district court did not clearly err in crediting Deputy Canfield's testimony over co-defendant Powner's testimony to determine that Bergin permitted Canfield to enter the residence. Deputy Canfield, as well as Deputy Corey Roberts both testified that Bergin was not allowed to re-enter his home to retrieve a pair of socks and Bergin asked them to enter the home and retrieve his socks. Powner's testimony that he was asked to enter the home to retrieve the socks and that he did in fact enter the home and shut the door behind him is in direct contradiction to the officers' testimony.

While neighbor April Campbell's testimony -- that she observed officers enter the house after Powner entered -- in part supports Powner's testimony, it does not make Deputy Canfield's testimony unbelievable as a matter of law. Campbell was unable to remember if Powner closed the door behind him when he entered the home.

3

Additionally, she testified that she never observed the officers speaking to Bergin. She also had no idea if anyone retrieved Bergin's socks. Thus, it was within the province of the magistrate, after observing each witness personally, to find Canfield more credible than Powner. See Ramirez-Chilel, 289 F.3d at 749.

As for Bergin's argument that it is illogical that a person in his position would permit a police officer to enter his home, it is even more illogical on these facts that a trained officer while making a felony arrest would allow a person to enter the residence and close the door. Lastly, the fact that Canfield included incorrect statements in his arrest report fails to make his overall testimony "exceedingly improbable." Canfield was extensively cross-examined about these statements and explained to the magistrate judge why he made the assumptions.

We are also unpersuaded by Bergin's claim that the post-indictment and arrest statements and testimony of his co-defendants should have been suppressed due to an illegal search. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Generally, evidence obtained by unconstitutional means is inadmissible because it is the "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 488 (1963). However, such evidence is admissible if it has been obtained "by means sufficiently

distinguishable to be purged of the primary taint." Id. One such exception is the attenuation doctrine. See United States v. Terzado-Madruga, 897 F.2d 1099, 1113 (11th Cir. 1990).

Where the connection between the unlawful conduct and the discovery of the challenged evidence may be so attenuated as to dissipate the taint, the exclusionary rule is rendered inapplicable. Etheridge v. United States, 380 F.2d 804, 808 (5th Cir. 1967).[2] Whether the discovery of evidence is sufficiently attenuated is an issue that "cannot be decided on the basis of causation in the logical sense alone, but necessarily includes other elements as well." United States v. Ceccolini, 435 U.S. 268, 274 (1978). When considering whether witness testimony is admissible, the district court must consider "the degree of free will exercised by the witness" and must balance "the social cost of exclusion that would perpetually disable a witness from testifying about relevant and material facts against the efficacy of exclusion in furthering the deterrent purpose of the exclusionary rule." United States v. Brookins, 614 F.2d 1037, 1042 (5th Cir. 1980) (quotation and brackets omitted). Both the voluntariness requirement and the greater social cost requirement are more readily satisfied if the challenged derivative evidence is testimony, rather than physical

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

evidence.  Id.  The attenuation analysis need not apply, however, absent an initial finding that there is at least some causal connection between the illegality and the testimony.  Terzado-Madruga, 897 F.2d at 1116.  Illegally obtained evidence is not excluded from presentation to a grand jury.  United States v. Calandra, 414 U.S. 338, 351-52 (1974).

In this case, the record reflects that after being arrested on September 22 and 23, 2009, co-defendants Bergin, Powner, Shandy Albert, and Theresa Martinez all made statements that implicated Bergin in the passing of fraudulent prescriptions. Bergin is correct that knowledge of their identities and involvement in the conspiracy can be traced back to evidence discovered during the unlawful searches of Bergin's home.

However, their statements and prospective testimony are attenuated from the illegal searches.  See Brookins, 614 F.2d at 1042.  As the record reflects, the statements made by Bergin, Powner, Albert, and Martinez were acts of their own free will.  Each person made the challenged statement almost two months after the illegal search.  The statements were all made after the co-defendants were indicted and arrested for their own role in the conspiracy.  Even though these statements were made after being arrested, there is nothing to suggest that the statements were coerced.  Each individual was given their Miranda rights, but elected to waive those

6

rights before speaking with Drug Enforcement Agent Amber Baginski and providing information about the conspiracy. Given the length of time between the illegal searches and the intervening indictments and arrests, the social cost of excluding such evidence outweighs the deterrent effect because there is nothing in the record to suggest that the exclusion of such evidence would have a deterrent effect on law enforcement misconduct.

Bergin also argues that the statements of co-defendants Susan Hamilton, Julie Becker, and Jarrett Sprafka should be suppressed as fruits of the illegal search. Each of these statements were made after the searches, but prior to the indictment. However, these statements and prospective testimony are also attenuated from the illegal searches. See id. As the record shows, each of these individuals made statements to the authorities of their own free will. While their names were discovered during the illegal search pursuant to the search warrant, Hamilton and Becker came to the attention of the police based on their independent arrests for passing fraudulent prescriptions. After Hamilton was arrested, she called a detective and requested to speak with him. After Becker was arrested, she elected to speak with Agent Baginski after being given her Miranda rights. Sprafka voluntarily contacted the police after learning he was on the pharmacy alert.

Additionally, there is no evidence showing that Becker and Sprafka were even aware of the illegal searches at the time they voluntarily spoke with the police. Given the circumstances of Hamilton, Becker, and Sprafka's statements, there is nothing in the record to suggest that the exclusion of such evidence would have a deterrent effect on law enforcement misconduct. Accordingly, we affirm.

**AFFIRMED.**