[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10869
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-21765-MGC

NATIONAL AUTO LENDERS, INC.,
a Florida corporation,

Plaintiff - Appellee,

versus

SYSLOCATE, INC.,
a Delaware corporation,
DRIVEOK, INC.,
a California corporation,
PROCON, INC.,
a Tennessee corporation,
individually and as successor in interest
to Syslocate, Inc., and DriveOK, Inc.,

Defendants - Appellants.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 11, 2011)

Before BARKETT and WILSON, Circuit Judges, and WALTER,[*] District Judge.

PER CURIAM:

SysLOCATE, Inc., DriveOK, Inc., and Procon, Inc. (together, "Defendants"), appeal the district court's denial of their motion to dismiss or to transfer venue, stay proceedings, and compel mediation and arbitration. We affirm.

SysLOCATE sold 2,450 GPS[1] units to National Auto Lenders, Inc. ("National"),[2] which were installed in cars on which National held liens so that National could track the cars' locations through SysLOCATE's website. National alleged that the units were defective and then began settlement negotiations with SysLOCATE. Negotiations stalled, and thereafter SysLOCATE included on its website end-user licence-agreements ("EULAs") that National employees had to "click through" and "accept" before using the SysLOCATE website to track the working GPS units. These EULAs contained forum-selection and arbitration clauses. When SysLOCATE posted the first EULA in 2008, National executives

---

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

[1] "GPS" is the common term and abbreviation for a "global positioning system." GPS is a technology used to remotely determine the location of a given object using a sensor that is tracked by satellites.

[2] SysLOCATE partnered with DrikeOK to sell the units, but for convenience, and because Procon ultimately acquired both SysLOCATE and DriveOK, we will refer only to SysLOCATE.

2

instructed their employees not to use the SysLOCATE website and informed SysLOCATE that only three executives were authorized to bind National to such an EULA: Asbel Perez, Ozzie Ramos, and Knox North. Nonetheless, after Procon acquired SysLOCATE and in 2009 posted a second EULA to which National objected, National employee Ralph Long used the Procon website and clicked on the "acceptance" button of a third EULA. National executives were not even aware of this third EULA, but Long's acceptance of this EULA is the basis on which Defendants argue that their motion to compel mediation and arbitration should have been granted.

The district court found, among other things, that Long's online acceptance of the EULA did not bind National, in large part because, before the 2009 EULAs were posted, National had specifically notified Defendants that only certain executives were authorized to bind National for legal issues related to the dispute over the defective GPS units. As part of its reaction to the first EULA, National sent an email asking SysLOCATE to terminate National's access to their website:

> This email constitutes a formal notification that an acceptance of the EULA by an NAL [National] user or subaccount user is not a valid acceptance by National Auto Lenders as no user or subaccount user is authorized by NAL to accept the EULA in NAL's behalf.

Nonetheless, Defendants argue that they reasonably relied on Long's apparent authority to bind National and that this reliance was reasonable because, with

3

National's awareness, Long corresponded with them about the terms of other related agreements and held himself out as a "manager."

We find no error in the district court's resolution of this case. Even assuming that Long had apparent authority to enter into some agreements on National's behalf as a result of past dealings or his title, the vigilance with which National guarded against subsequent EULAs affecting its rights in the dispute over the allegedly defective SysLOCATE GPS units makes reliance on any employee's apparent authority regarding that dispute unreasonable. As we have noted, a party's reliance on an agent is unreasonable when that party has "been confronted with circumstances adequate to put him on inquiry as to the legitimacy of the agent's authority." Am. Lease Plans, Inc. v. Silver Sand Co. of Leesburg, Inc., 637 F.2d 311, 314 (5th Cir. 1981).[3] Over the course of settlement negotiations, National had consistently rejected any new agreements that could be used as defenses to claims regarding the SysLOCATE GPS units and stated that it would not accept such an agreement. National had clearly informed Defendants that only certain executives could bind the company and that communications about the dispute over the defective units must go through counsel. Defendants

_____

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

cannot retrospectively alter the terms of a sale by slipping into a website's EULA provisions that National has stated it would not accept and that its employees lacked authority to accept.[4]

In sum, we find that National did not agree to arbitrate this dispute, nor to litigate in any particular forum. Accordingly, we affirm the district court's order denying Defendants' motion to dismiss or transfer venue and compel mediation and arbitration.

**AFFIRMED**.

---

[4] Defendants' alternative claim that National ratified either the second or third EULA likewise fails. "Before ratification will be implied of an act of an unauthorized agent it must be made to appear that the principal has been fully informed and that he has approved." Frankenmuth Mut. Ins. Co. v. Magaha, 769 So. 2d 1012, 1021 (Fla. 2000) (quoting Ball v. Yates, 29 So. 2d 729, 732 (Fla. 1946)). Here, though, National immediately objected to the second EULA, and Defendants offer no evidence that National's executives were aware of the third EULA until after this litigation began. Thus, the ratification doctrine is inapplicable.