[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14555
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-03532-TWT


WAYNE CHADWICK,

Plaintiff - Appellant,


versus


BANK OF AMERICA, N.A.,

Defendant - Appellee.


_____

Appeals from the United States District Court
for the Northern District of Georgia

_____


(July 8, 2015)

Before MARCUS, WILLIAM PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Wayne Chadwick appeals the district court's order denying Chadwick's motion to strike an affidavit and granting summary judgment in favor of Bank of America, N.A. (BANA). For the reasons below, we affirm.

## I. BACKGROUND

This case arises out of a foreclosure action initiated by BANA against Chadwick on Chadwick's home in Georgia. The relationship between Chadwick and BANA is set forth in two contracts, both executed in 2003 when Chadwick took out a $157,000 loan to refinance his pre-existing mortgage: the Security Deed and the Promissory Note.

The Security Deed confers on BANA "the right to foreclose and sell the Property" in the event Chadwick defaults on the loan. The Promissory Note in turn states Chadwick "will be in default" if he does not pay "the full amount of each monthly payment on the date it is due."

In 2009, Chadwick defaulted on the loan by failing to make three consecutive monthly payments. As required by the Security Deed, BANA sent Chadwick notices of intent to accelerate dated May 18, 2009, August 17, 2009, October 19, 2009, and February 8, 2010. Each of the notices contained substantially the same information. Specifically, the February 2010 notice stated:

2

(a) Chadwick was in default as of October 1, 2009; (b) BANA must receive $5,252.78 to cure the default; (c) the money was due by March 10, 2010; (d) if the default were not cured by then, BANA would accelerate the mortgage payments and initiate foreclosure proceedings; and (e) Chadwick had a right to reinstate after acceleration. Each notice also penalized Chadwick with a late-payment fee.

After receiving the February 2010 notice, Chadwick made only one payment for $1,005.29 on or about February 26, 2010. Chadwick did not make any further payments on the loan. He claims he offered to make payments over the telephone, but was told he had to seek modification. BANA disputes this assertion, claiming it never said it would reject Chadwick's tender.

In either case, Chadwick did not cure his default, and BANA retained McCalla Raymer to conduct a non-judicial foreclosure sale of the property. A foreclosure sale was initially scheduled to take place on June 1, 2010. In May 2010, however, Chadwick applied for a loan modification and requested the foreclosure be postponed pending review of his application. The investor, Federal National Mortgage Association (Fannie Mae), approved postponement of the June 2010 sale pending this review.

On or about May 2010, BANA determined Chadwick qualified to be reviewed for the "Making Homes Affordable" program, but additional documentation was needed to complete the review. Before Chadwick

3

submitted the required documentation, however, he filed for bankruptcy. Accordingly, no loan modification review was completed in 2010.

Chadwick's bankruptcy petition was ultimately dismissed, and he applied again for a loan modification in April 2011.  In that same month, Chadwick submitted some, but not all of the documents necessary to enable BANA to complete a loan modification review.  Over the next several months, BANA requested additional documents from Chadwick.  Chadwick failed to provide all of the required documents.

Subsequently, on June 30, 2011, McCalla Raymer sent Chadwick a letter advising Chadwick that he still owed $170,052.30 to BANA and could contact McCalla Raymer for reinstatement and payoff figures.  On July 6, 2011, McCalla Raymer sent Chadwick a second letter informing Chadwick of several alternatives, including loan modification, that may be available to avoid foreclosure.  The July 6 letter cautioned, however, that in order to take advantage of these alternatives, Chadwick must submit certain financial documentation.

On July 26, 2011, McCalla Raymer sent Chadwick a third letter, a notice of foreclosure sale, which reminded Chadwick that the total amount on his loan was due and scheduled a September 6, 2011 foreclosure sale date.

McCalla Raymer also published a copy of the notice of sale in the Forsyth County legal organ for four consecutive weeks prior to the September 6, 2011 sale date.

On September 1, 2011, BANA asked the investor, Fannie Mae, to postpone the September 6 sale because Chadwick had again requested to be reviewed for a loan modification. Fannie Mae did not grant the request.

On September 2, 2011, a BANA employee sent an email to Alisha Smith, a representative of Chadwick's authorized third-party payer, requesting additional documents needed to review Chadwick for the modification. The email stated certain documents were "missing or outdated" and provided a list of documents needed to review Chadwick for modification. As financial documents expire after 90 days, the email emphasized all of the listed documents "must be Signed and Dated within 90 DAYS." The email did not state the September 6, 2011 foreclosure would be postponed or otherwise reference a foreclosure sale. Later in the day on September 2, 2011, a BANA employee sent another email to Alisha Smith clarifying that the foreclosure was still scheduled and collections will continue.

In the end, Chadwick never submitted the documents requested in the September 2, 2011 email, and the modification was denied. Accordingly, Chadwick's home was sold at a public foreclosure sale on September 6, 2011 to BANA for $171,795.34, which represented the outstanding indebtedness Chadwick owed on the loan.

In October 2012, Chadwick sued BANA alleging several causes of action, including wrongful foreclosure, and seeking attorneys' fees. In June 2014, BANA moved for summary judgment. In support of its motion, BANA filed the affidavit of one of its officers, Brianna May.

Chadwick responded to BANA's motion for summary judgment and moved to strike May's affidavit. On September 9, 2014, the district court denied Chadwick's motion to strike May's affidavit and granted BANA's motion for summary judgment. Chadwick appealed.

## II. DISCUSSION

### A. *May's Affidavit*

Chadwick argues the district court erred in considering May's affidavit when it ruled on BANA's motion for summary judgment. Specifically, Chadwick argues (1) May is a surprise witness; and (2) her testimony is based on inadmissible hearsay. We disagree with both arguments.

6

First, although BANA did not explicitly identify May as a witness in its discovery disclosures, we agree with the district court May is not a surprise witness. Prior to the close of discovery, Chadwick had notice that May had information relevant to his claims. In particular, on February 20, 2014 May verified BANA's responses to interrogatories about the foreclosure process on Chadwick's Loan. As a result, May's knowledge of the case should not have surprised Chadwick. Chadwick had ample opportunity to depose her, but simply chose not to. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 732 (7th Cir. 2004) (holding no discovery violation, even though affiant was not listed in defendants' discovery responses, because "plaintiffs were on notice prior to the close of discovery that [affiant] had information pertinent to this matter and was a potential witness" and thus "plaintiffs had a fair opportunity to seek discovery"); *see also* Advisory Committee's Notes on 1993 Amendment to Fed. R. Civ. P. 26(e) (explaining a party has "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition").

Second, May's affidavit is not based on inadmissible hearsay. As manager of BANA's Mortgage Resolution Team and BANA's authorized representative, May was competent to lay the foundation for the business records. *See Rosenberg*

*v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980)[1] ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records.").  While it is true, as Chadwick points out, May did not expatiate on her specific job experience or how exactly the records were maintained, we are mindful that "[t]he absence or extent of personal knowledge regarding preparation of a business record affects the weight rather than the admissibility of the evidence." *United States v. Page*, 544 F.2d 982, 987 (8th Cir. 1976).  May's testimony was sufficient to lay the foundation for the records.[2]

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[2] Chadwick also urges, even if the rest of May's affidavit is admissible, paragraph 18 in particular constitutes inadmissible hearsay.  Paragraph 18 of May's affidavit states "[a]t no point did BANA reject Plaintiff's tender or state that it would not accept Plaintiff's tender."

The district court did not address Chadwick's specific hearsay challenge to paragraph 18, presumably because Chadwick did not assert it until his reply brief in support of his motion to strike.  As the argument was not properly presented before the district court, we need not address it here.  *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1352 (11th Cir. 2009) ("Because the issue or argument was not properly presented to the district court, we will not decide it.").

In any event, though, we do not believe paragraph 18 of May's affidavit contains inadmissible hearsay.  "Testimony that conveys a witness's personal knowledge about a matter is not hearsay." *United States v. Vosburgh*, 602 F.3d 512, 539 n.27 (3d Cir. 2010).  Though there is a fine line between hearsay—i.e., "testimony that recounts what was spoken by an out-of-court-declarant"—and testimony about matters within a witness's personal knowledge, we are convinced paragraph 18 is the latter. *See id.*  Paragraph 18 simply proffers May's personal knowledge, acquired after reviewing BANA's business records and files, that BANA did not reject Chadwick's tender or tell him it would not accept tender.  Such testimony is admissible, and the district court did not err in considering May's affidavit in its entirety.

8

*B.  Mutual Deviation*

Chadwick next argues the district court erred in granting summary judgment on his wrongful foreclosure claim because there was a jury question as to whether the parties mutually departed from the terms of the Security Deed.  Chadwick's theory is that BANA and Chadwick departed from the terms of the Security Deed and formed a quasi-new agreement when BANA, on several occasions, accepted late and partial payments from Chadwick.  Under this quasi-new agreement, BANA was not permitted to foreclose without providing Chadwick yet another notice of its intent to do so.  *See* O.C.G.A. § 13-4-4 ("Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement.  The contract will be suspended by the departure until such notice.").

The district court correctly rejected this argument.  There is no evidence the parties agreed, much less mutually agreed, to depart from the terms of the Security Deed.  In fact, Paragraph 1 of the Security Deed (to which both parties assented) expressly provides that "[BANA] may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future."

9

Chadwick tries to circumvent the unequivocal anti-waiver provision of Paragraph 1 by claiming it, too, is waived.  Chadwick did not raise this argument in his response to BANA's motion for summary judgment before the district court. His argument is therefore waived.  *See Hurley v. Moore,* 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").  Even if Chadwick's new argument were not waived, though, it has no merit.  BANA accepted only a small handful of late payments from Chadwick over the course of several years, and each time Chadwick defaulted BANA imposed late fees and warned Chadwick about the consequences of failing to cure his breach.  The undisputed evidence in this case is insufficient to establish a waiver of the express terms of the Security Deed.  *See Crawford v. First Nat. Bank of Rome*, 223 S.E.2d 488, 490 (Ga. App. Ct. 1976) ("The mere fact that the defendant paid some installments after they were due and in amounts less than the stipulated sum, without any subsequent agreement to do so and without any consideration therefor, would not be sufficient to show such a departure from the original contract as to require notice from the plaintiff of intention to comply with the strict terms thereof before the plaintiff could insist upon a forfeiture of the same." (quotation omitted)).

## C. Dual-tracking

Finally, Chadwick argues the district court erred in granting summary judgment because there was a jury question as to whether BANA exercised its power of sale unfairly. Specifically, Chadwick challenges BANA's practice of dual-tracking, whereby BANA simultaneously pursued a foreclosure on Chadwick's home while considering him for a loan modification. According to Chadwick, BANA's dual-tracking lulled him into thinking he was no longer at risk of foreclosure. The subsequent foreclosure surprised him and was unfair.

Certain state legislatures, such as California, have passed laws forbidding dual tracking. *See, e.g.*, Cal. Civ. Code § 2923.6(c). Georgia law, however, does not support a cause-of-action for wrongful foreclosure simply because a bank pursues modification and foreclosure at the same time. *Cf. Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1343 (N.D. Ga. 2013) ("seeking a loan modification does not give Plaintiff a cause of action for wrongful foreclosure"). The two cases Chadwick cites are not on point because in both cases the bank affirmatively represented it would not pursue foreclosure, and then later sandbagged the borrower. *See, e.g.*, *Joseph v. Fed. Home Loan Mortgage Corp.*, 2012 WL 5429639, at *3 (N.D. Ga. Nov. 6, 2012) (wrongful foreclosure claim when bank told borrower, in writing, to "stop making payments in order to receive a permanent modification"); *Stimus v. CitiMortgage, Inc.*, 2011 WL 2610391, at

11

*5 (M.D. Ga. July 1, 2011) (wrongful foreclosure claim when bank told borrower "the modification of her mortgage had been approved" and represented "the property would not be foreclosed upon"). That is not the situation here, where BANA has repeatedly expressed its intent to enforce the terms of the Security Deed and pursue foreclosure.[3] Accordingly, the district court did not err in granting summary judgment in favor of BANA.[4]

*D. Attorney's Fees*

Chadwick's claim for attorney's fees is contingent on the success of his underlying claims. *See Davis v. Johnson*, 634 S.E.2d 108, 110-11 (Ga. App. Ct. 2006). We have rejected Chadwick's arguments as to the district court's grant of summary judgment on Chadwick's underlying claims. Accordingly, the district court did not err by rejecting Chadwick's claim for attorney's fees.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[3] Chadwick's vague, self-serving testimony that he spoke with an unnamed BANA representative on some unspecified date, and the representative told him not to send BANA any money, is insufficient to establish a genuine issue of fact as to whether BANA misrepresented its intentions to Chadwick. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[4] Chadwick also contends the district court erred in granting summary judgment because "the credibility and authenticity of BANA's evidence by itself presented a jury question." We do not address this argument because it was not raised or addressed below. *See Smith*, 572 F.3d at 1352.