**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Thomas W. AVENT, Jr.; Raymond J. Pirrello, Jr.; Defendants.**

CIVIL ACTION NO. 1:16–CV–2459–SCJ

United States District Court, N.D. Georgia, Atlanta Division.

Signed 06/14/2017

Robert MacDonald Moye, pro hac vice, John Edward Birkenheier, Ruta G. Dudenas, Securities and Exchange Commission, Chicago, IL, Pat Huddleston, II, Securities & Exchange Commission, Atlanta, GA, for Plaintiff.

Todd Harrison, McDermott Will & Emery, Martin H. Kaplan, pro hac vice, Joseph Christopher Albanese, Gusrae Kaplan Nusbaum PPLC, New York, NY, Drew Findling, The Findling Law Firm, P.C., James William Cobb, Timothy Brandon Waddell, Caplan Cobb LLP, Gregory Scott Brow, Jeffrey Allen Zachman, Dentons US LLP, Atlanta, GA, for Defendants.

## ORDER

HONORABLE STEVE C. JONES,
UNITED STATES DISTRICT JUDGE

This matter appears before the Court on a Motion to Dismiss (Doc. No. [20]) and a Motion for Oral Argument (Doc. No. [34]) filed by Defendant Thomas Avent, Jr. Because this matter is before the Court on a Motion to Dismiss, which is decided based on the allegations in the complaint and the legal arguments of the parties, the Court concludes that a hearing is unnecessary, and Avent's Motion for Oral Argument (Doc. No. [34]) is **DENIED**. The Court now turns to the allegations in the complaint.

## I. BACKGROUND

Avent was a Southeast Area Partner-in-Charge at one of the world's largest accounting firms. Doc. No. [1], pp. 5, 8; ¶¶16, 25. He ran the mergers and acquisitions

tax practice—which performs tax due diligence work—making him privy to material, non-public information about the companies. Id. p. 8, ¶25. During 2011 and 2012, Avent worked on the planned acquisitions of Radiant, Midas, and BrightPoint by three of the firm's clients. Id. ¶¶27–29.

## A. The Radiant Transaction

In June 2011, Avent began work for a client on a planned tender offer for Radiant. Id. pp. 12–13, ¶43. This exposed Avent to certain material, non-public information, including a portion of the merger agreement and the tax due diligence report for the acquisition. Id. On the day he received the tax due diligence report for the Radiant acquisition, Avent contacted his stock broker—Raymond Pirrello, Jr.—and informed him of the planned tender offer for Radiant. See id. p. 13, ¶44. Pirrello, in turn, contacted his friend Lawrence Penna, who directed his son to purchase Radiant securities. See id. The Monday following these transactions, the Radiant acquisition was publicly announced, causing Radiant stock to jump more than 30%. Id. p. 15, ¶47.

The next day, Penna's son sold the Radiant stock he acquired, netting more than $25,000. Id. ¶49. In a text message exchange, Penna informed Pirrello of the profits, and Pirrello asked Penna to make payments to an AMEX account. Id. pp. 15–16, ¶50. Penna complied, paying $7,500 to AMEX on Pirrello's behalf. Id. p. 16, ¶¶51–52. Pirrello also used the information about the Radiant acquisition to benefit other colleagues and clients, who made approximately $44,000 trading on the information. Id. ¶54. In November 2011, Pirrello sent Avent a $50,000 personal check made payable to "cash," which Avent deposited on November 18, 2011. Id. ¶53.

## B. The Midas Transaction

In January 2012, Avent began work on a planned acquisition of Midas. Id. p. 17, ¶¶55–57. Avent disclosed sensitive, confidential information about the Midas acquisition to Pirrello during February 2012. Id. pp. 17–18, ¶¶58–60. Pirrello, in turn, had numerous communications with Penna during this time. Id. pp. 18–19, ¶61. As a result of the communications with Pirrello, Penna's son bought call options for tens of thousands of shares of Midas stock, which were due to "expire worthless, unless the price of Midas stock reversed course and increased significantly in less than 3 weeks." Id. pp. 18–23, ¶¶62–70.

However, when Midas announced that it had entered into a purchase agreement for $11.50 per share, Penna's son sold the call options for a profit of over $50,000. Id. p. 24, ¶¶71, 74. A few hours after the Midas announcement, Avent text Pirrello, "Happy?" Id. ¶73. Pirrello responded, "Price bad," to which Avent replied, "Whatever." Id. Penna sent $14,000 to Pirrello's AMEX account within a week of the Midas announcement, and other of Pirrello's colleagues and clients used the confidential information to make nearly $80,000 in profits. Id. p. 25, ¶¶75–76.

## C. The BrightPoint Transaction

In June 2012, Avent began work on a planned acquisition of BrightPoint, again acquiring material, nonpublic financial information. Id. pp. 25–26, ¶78. The very day he approved the tax due diligence report for the acquisition, Avent called Pirrello and disclosed material, nonpublic information about the acquisition. Id. ¶¶78–79. Pirrello forwarded the information to Penna, who had his son purchase BrightPoint securities. Id. p. 26, ¶79. The following business day, the BrightPoint acquisition was announced, and the value of the stock rose by 66.5%. Id. p. 27, ¶81. Penna's son sold the BrightPoint stock, gaining over $30,000, while other of Pirrello's clients and colleagues used the information to

make more than $90,000 in profits. Id. p. 28, ¶¶84–85.

## D. Subsequent Interactions with Pirrello

In September 2012, shortly after the BrightPoint acquisition, Pirrello helped Avent raise $250,000 in cash by facilitating the sale of an illiquid investment. Id. pp. 28–29, ¶86. Avent had acquired a promissory note in a private placement that promised payment by December 31, 2011. Id. But as of September 2012 no payment had been made. Id. Although there was no public market for the note, making it difficult to sell, Pirrello found another of his customers willing to buy the note from Avent for full face value. Id. "Despite his displeasure over prior trading losses, Avent continued to invest through Pirrello well into 2015." Id. p. 31, ¶91; see also id. ¶¶92–93.

## II. LEGAL STANDARD

In deciding a motion to dismiss, the Court must accept all of the well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007). A complaint may be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

## III. ANALYSIS

 Based on the above allegations, the Securities and Exchange Commission ("SEC") brought the present suit against Avent, Pirrello, and Penna asserting two claims for violations of the Exchange Act, 15 U.S.C. §§ 78a et seq. Doc. No. [1], pp. 31–37, ¶¶94–109. Particularly, the SEC contends that Avent's actions constituted insider trading in violation of 15 U.S.C. § 78j(b) ("§ 10(b)") and Rule 10b–5 thereunder (17 C.F.R. § 240.10b–5), as well as 15 U.S.C. § 78n(e) ("§ 14(e)") and Rule 14e–3 thereunder (17 C.F.R. § 240.14e–3). Id. "In order to establish liability under § 10(b) and § 14(e) of the Securities and Exchange Act and accompanying Rules 10b–5 and 14e–3, the SEC must prove that [Avent] acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.' " S.E.C. v. Ginsburg, 362 F.3d 1292, 1297 (11th Cir. 2004). This requires that the insider "possess material nonpublic information" and that that "information be used in a trade." Id. at 1297–98. Section 10(b) further requires that the tipper breach a fiduciary duty, which occurs "when the tipper discloses the inside information for a personal benefit." Salman v. United States, — U.S. ——, 137 S.Ct. 420, 423, 196 L.Ed. 2d 351 (2016). The crux of Avent's motion to dismiss is whether the SEC has properly alleged that Avent received a personal benefit for disclosing material, nonpublic information to Pirrello.

As an initial matter, the SEC argues that its claim for a violation of § 14(e) and Rule 14e–3 does not require a showing of a personal benefit to the tipper. Doc. No. [27], pp. 20–22. In support of his position that § 14(e) does require a personal benefit to the tipper, Avent cites to Smallwood v. Pearl Brewing Co., 489 F.2d 579 (5th Cir. 1974), where the former Fifth Circuit held that "the elements to be proved to establish a violation of [§ ] 14(e) are identical to those under [Rule 10b–5]." 489 F.2d at 606. Avent is correct that the Court is bound by opinions of the Fifth Circuit decided on or before September 30, 1981. Bonner v. City of Prichard, Ala., 661 F.2d

1206, 1209 (11th Cir. 1981). He is also correct that the Court is bound by such precedent unless it is overruled or undermined to the point of abrogation. See In re Lambrix, 776 F.3d 789, 794 (11th Cir. 2015). However, the SEC rightly points out that Rule 14e–3, the supplementary rule Avent is charged with violating in Claim Two, was adopted after Smallwood was decided. See 17 C.F.R. § 240.14e–3; see also Doc. No. [1], p. 33–37, ¶¶100–109.

Rule 14e–3 prohibits insider trading "without requiring a showing that the trading at issue entailed a breach of fiduciary duty." United States v. O'Hagan, 521 U.S. 642, 666–67, 117 S.Ct. 2199, 2214, 138 L.Ed. 2d 724 (1997). In this respect, a claim under § 14(e) and a claim under § 10(b) are distinctly different. See id. at 652, 117 S.Ct. 2199, 2214 (holding that a person "violates § 10(b) and Rule 10b–5, when he misappropriates confidential information ... in breach of a duty owed to the source of the information"). Thus, the Court concludes that, to the extent Smallwood held "the elements to be proved to establish a violation of [§ ] 14(e)" are "identical" to those establishing a violation of § 10(b), Smallwood has been undermined to the point of abrogation by the adoption of Rule 14e–3 and the Supreme Court's subsequent decision in O'Hagan.[1]

Because the mandate that a tipper disclose "the inside information for a personal benefit," arises out of § 10(b)'s requirement that the tipper breach a fiduciary duty, it appears a violation § 14(e) may not require proof that the tipper disclosed the information for a personal benefit. See Salman, 137 S.Ct. at 423; see also SEC v.

Downe, 969 F.Supp. 149, 153 (S.D.N.Y. 1997) (holding that a "personal benefit to the tipper is not required" under Rule 14e–3). In any event, the Court need not reach this issue because it concludes that the SEC has sufficiently alleged that Avent intended to receive, and did in fact receive, a personal benefit from the disclosure of insider information to Pirrello.

A bird in the hand is worth two in the bush, and cash in hand is worth more than a promissory note. The SEC's allegation that Pirrello helped Avent to sell an overdue, illiquid promissory note for its full face value is, thus, sufficient to allege that Avent received a benefit. See Doc. No. [1], pp. 28–29, ¶86. The Supreme Court has rejected the notion that a person must receive a direct cash payment from the tippee in order to receive a "personal benefit." See Salman, 137 S.Ct. at 423. Plaintiff argues that the Court should believe his "innocent" reason for why Pirrello helped him to sell the note—because Pirrello was Avent's stock broker. See Doc. No. [20–1], pp. 16–17. Setting aside the fact that stock brokers generally buy and sell stocks, not private promissory notes, the Court's role is not to decide what "the real reasons for the benefits to Avent" are, as Avent seems to believe. See id. p. 16. Indeed, Avent's briefs are based around allegations of fact not in the complaint and a hyper-technical interpretation of the pleading standards.

For example, Avent attempts to explain away the $50,000 check sent to him by Pirrello by asking the Court to take judicial notice a suit Avent filed against Pirrello. See Doc. No. [20–1], pp. 7–8, 16–17. In

---

1. Avent cites to Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200 (5th Cir. 2009) to argue that Smallwood is still good law. Doc. No. [33], p. 9, n.5. Indeed, Flaherty cites to Smallwood for the proposition that the "elements of a claim under [§ ] 14(e) ... are identical to the [§ ] 10(b)/Rule 10b–5 elements." Flaherty, 565

F.3d at 207. However, the Court is not bound by Flaherty and does not find it to be persuasive because the case nowhere discusses the fact that Rule 14e–3 does not require a breach of fiduciary duty, while § 10(b) does. See id.; see also O'Hagan, 521 U.S. at 652, 666–67, 117 S.Ct. 2199.

that suit, Avent alleges that the $50,000 check was in partial satisfaction of a dispute over trading losses between himself and Pirrello. See Avent v. Pirrello, N.D. Ga. Case No. 16–cv–01127, Doc. No. [10], pp. 6–7, ¶¶16–19. This is, of course, not proof, but merely an allegation of fact— one notably lacking from the complaint filed by the SEC. Even if the Court were to consider the allegation, the fact remains that the alleged "settlement payment" was made shortly after Avent allegedly gave Pirrello material, confidential information, which Pirrello then gave to his clients and colleagues who made nearly $70,000 trading on the information. See Doc. No. [1], pp. 15–16; ¶¶49, 53–54. A reasonable inference from these facts is that Avent's provision of the insider information engendered good will between Pirrello and Avent, which "greased the wheel" allowing Avent to settle his dispute with Pirrello for cash. Such a gift of insider information to bolster a professional relationship can be a sufficient personal benefit to sustain a claim of insider trading. See S.E.C. v. Yun, 327 F.3d 1263, 1280 (11th Cir. 2003) (evidence that tipper gave information to maintain "a good relationship between a friend and frequent partner in real estate deals" was a sufficient personal benefit).

Avent attempts to get around these alleged benefits by arguing that the SEC has not sufficiently alleged that he intended to receive them. Doc. No. [20–1], pp. 14–16. The SEC must indeed demonstrate that Avent intended to benefit from his alleged tips to sustain a claim under § 10(b), but "[t]he showing needed to prove an intent to benefit is not extensive." Yun, 327 F.3d at 1280. Contrary to Avent's hyper-technical interpretation of the pleading standards, there are no magic words that the SEC is required to use in its complaint.

▌ Rule 9(b) requires that, in cases of alleged fraud, the complaint "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, the application of Rule 9(b) "must not abrogate the concept of notice pleading." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). The rule is only intended to alert "defendants to the 'precise misconduct with which they are charged' and protect[ ] defendants 'against spurious charges of immoral and fraudulent behavior.'" Id. "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Id.

Rule 9(b)'s requirements are met here. The SEC explains what statements were made, when the statements were made, the content of the statements, and what Avent received as a consequence of the alleged fraud. See id. Namely, the SEC alleges that Avent called Pirrello on multiple occasions and disclosed insider information about specific transactions. See Doc. No. [1], pp. 13, 17–18, 25–26; ¶¶44, 58–60, 78–79. The SEC details the timing of these phone calls down to the minute. See id. pp. 13–14, 19, 26–27; ¶¶45, 62, 80. Although Avent disputes that he received any benefits for the alleged tips, the complaint contains allegations of what Avent supposedly gained "as a consequence of the fraud." See Ziemba, 256 F.3d at 1202; Doc. No. [1], pp. 15–16, 28–29; ¶¶49, 53–54, 86.

Avent makes the curious argument that the SEC's allegation that he received a personal benefit "from" his disclosure to Pirrello is insufficient, while an allegation

that he received a personal benefit "in exchange for" his disclosure to Pirrello would be sufficient. Doc. No. [20–1], p. 15. Neither Rule 9(b) nor any precedential authority imposes such a technical pleading requirement. The standard, even in cases where a plaintiff is alleging fraud, is whether the pleading puts the defendant on notice of the misconduct with which he is charged. See Ziemba, 256 F.3d at 1202. Avent cannot plausibly contend that he does not know what misconduct the SEC alleges he committed.

The complaint contains sufficient factual allegations to allow the Court to "draw the reasonable inference" that Avent gave insider information with an intent to receive a benefit in return, even if the allegations do not use the exact words Avent would prefer. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. However unlikely, it is conceivable that Avent may have given Pirrello confidential information about the Radiant acquisition without thinking Pirrello would give Avent the $50,000 check in return. But the fact that Avent then turned around and gave Pirrello confidential information about two more acquisitions leads to the reasonable inference that he intended to receive a benefit from Pirrello.

Indeed, after the Midas transaction was announced—resulting in a personal profit of $14,000 for Pirrello—Avent text Pirrello to see if he was "[h]appy." Doc. No. [1], p. 24, ¶73. Pirrello thought the price was "bad," and Avent gave Pirrello still more confidential information. Id.; see also id. pp. 25–26, ¶¶78–79. After the third round of alleged insider trading, Pirrello found a buyer for Avent's overdue, illiquid promissory note. See id., pp. 28–29, ¶86. The SEC's allegations do not need to prove that Avent had a specific intent to receive a particular cash benefit in order to succeed on its claim of insider trading. As mentioned above, proof that Avent gave confidential information with the intent of strengthening his relationship with Pirrello could be a sufficient personal benefit to sustain a claim of insider trading. See Yun, 327 F.3d at 1280. At a minimum, the SEC's allegations are sufficient to survive the motion-to-dismiss stage.

## IV. CONCLUSION

Accordingly, the Motion to Dismiss (Doc. No. [20]) and Motion for Oral Argument (Doc. No. [34]) are **DENIED**.

**IT IS SO ORDERED**, this 14th day of June, 2017.