[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11135

Non-Argument Calendar

_____

DIANNA YODER,
Individually and on behalf of other similarly situated
KELLEY WILLIAMS,
Individually and on behalf of other similarly situated
JOSHUA DAVIS,
RICHARD BUTTS,

                                        Plaintiffs-Appellants,

CLINT WALDING,

                                        Plaintiff,

*versus*

FLORIDA FARM BUREAU, et al.

2                        Opinion of the Court                    22-11135

                                                        Defendants,


FLORIDA FARM BUREAU CASUALTY INSURANCE
COMPANY,
FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY,
SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY,


                                            Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:19-cv-00070-AW-GRJ

_____

Before WILSON, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants appeal the district court's summary judgment order holding that they were "independent contractors" rather than "employees" of the Defendants-Appellees, and therefore not entitled to the overtime protections afforded by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 297. After careful review of the record, we agree with the district court's determination and AFFIRM.

## I.

Appellants Diana Yoder, Kelley Williams, Joshua Davis, and Richard Butts are four insurance agents (collectively, the Agents). Each entered separate contracts with Appellees Florida Farm Bureau Casualty Insurance, Florida Farm Bureau General Insurance Company, and Southern Farm Bureau Life Insurance Company (collectively, Farm Bureau) to exclusively sell and service Farm Bureau products. The Agents' income came exclusively from commissions of Farm Bureau products that they issued or renewed. The Agents operated from Farm Bureau agencies located in offices that were supplied, operated, and provided by Farm Bureau.[1]

Following the termination of their contracts, the Agents sued Farm Bureau claiming entitlement to overtime pay as employees under the FLSA. Farm Bureau moved for summary judgment, arguing that the Agents were independent contractors under the FLSA, thus extinguishing any entitlement to overtime pay. In response, the Agents argued that Farm Bureau controlled every significant aspect of their work, and that the Agents had no opportunity for profit or loss and were not required to personally invest in materials for work. Thus, they are employees entitled to overtime pay under the FLSA.

---

[1] The parties dispute this fact, but at summary judgment we construe all facts in favor of the nonmovant. *See Scantland v. Knight*, 721 F.3d 1308, 1310 (11th Cir. 2013).

The district court granted summary judgment for Farm Bureau, finding the Agents were independent contractors. The district court drew guidance from caselaw, analyzed the *Scantland v. Knight*, 721 F.3d 1308 (11th Cir. 2013), factors, and found that four of the factors favored independent contractor status while two, permanency and integrality, favored employee status. Ultimately, the court concluded that "[the Agents] chose how to grow their business. They chose how much of their own money to invest . . . . They retained discretion to hire staff to help them. In short, they had substantial control over how they worked and how much they earned—making them economically independent." *Yoder v. Fla. Farm Bureau Cas. Ins. Co.*, No. 1:19-cv-70-AW-GRJ, 2022 WL 1055184, at *10 (N.D. Fla. Mar. 9, 2022).

The Agents timely appealed.

## II.

We review an appeal from summary judgment de novo and apply the same legal standards as the district court. *Scantland* , 721 F.3d at 1310. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor." *Scantland*, 721 F.3d at 1310.

### III.

To determine an individual's employment status under the FLSA, "courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrated dependence." *Id.* at 1311. "Ultimately, in considering economic dependence, the court focuses on whether an individual is in business for himself or is independent upon finding employment in the business of others." *Id.* at 1312 (internal quotation marks omitted). Because "a constricted interpretation of the [the FLSA] by courts would not comport with [the FLSA's] purpose," our circuit holds that "[t]he common law concepts of 'employee' and 'independent contractor' [are] specifically rejected as determinants of who is protected" by the FLSA. *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976).[2]

We use the following six non-exhaustive *Scantland* factors to guide the economic reality inquiry:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

---

[2] Decisions from the former Fifth Circuit predating the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

    (3) whether the service rendered requires a special
skill;

    (4) the degree of permanency and duration of the
work relationship;

    (5) the extent to which the service rendered is an in-
tegral part of the alleged employer's business;

    (6) the extent to which the service rendered is an in-
tegral part of the alleged employers' business.

*Scantland*, 721 F.3d at 1312.

## IV.

The Agents allege two overarching errors with the district court's reasoning: first, that drawing guidance from non-FLSA caselaw was erroneous, and second, the court misapplied the relevant test by dismissing the dispositive factor: economic dependence. After careful review, we find that the Agents were properly classified as independent contractors. We address each argument in turn.

### A.     Non-FLSA Caselaw

"The common law concepts of 'employee' and 'independent contractor' [are] specifically rejected *as determinants* of who is protected" by the FLSA. *Usery*, 527 F.2d at 1311 (emphasis added). The Agents argue that the district court erred by drawing guidance from common law authority to determine employment status. We disagree. The district court employed the proper FLSA standard as the *determinant* of the Agents' employment status: economic independence. *See Yoder*, 2022 WL 1055184, at *10 ("This conclusion

follows careful consideration of the six *Scantland* factors . . . [b]ut this was not simply counting factors.  I considered each factor in the context of the overall issue, which is economic dependence.").  Thus, the cases the district court drew guidance from did not amount to error because it did not change the scope of the relevant analysis.

### B.    *Economic Independence*

The Agents next argue that the district court applied the incorrect analyses to determine the outcome of the individual *Scantland* factors.  They claim that instead of focusing on whether the Agents were dependent on Farm Bureau, the court focused on common law concepts of employment.  We disagree.

The court correctly identified the proper rubric for determining each factor under our caselaw.  *See Yoder*, 2022 WL 1055184, at \*3–9 (citing to *Scantland*, 721 F.3d 1308, for the proper scope of each factor and analyzing each under the stated scope).[3]

### i.    *Control*

The Agents contend that Farm Bureau controlled every significant aspect of their work.  Under the control factor, we consider

---

[3] The Agents encourage us to adopt the standard set out in *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110 (11th Cir. 2018) (*Garcia-Celestino II*) and *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276 (11th Cir. 2016) (*Garcia-Celestino I*) for our analysis.  But those cases apply the "Aimable factors" test for joint employment under the FLSA, not the *Scantland* economic reality test—relevant here—to determine an alleged employee's employment status under the FLSA.  *Garcia-Celestino I*, 843 F.3d at 1294.

the "nature and degree of the alleged employer's control as to the manner in which the work is to be performed.  Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity."  *Scantland*, 721 F.3d at 1313 (internal quotation marks omitted).  The evidence the Agents point to reflect control over aspects like what products can be sold and what the commission rate is, but the evidence does not go towards the *manner* in which the work is to be performed.  The record reflects that the Agents are free to control the manner in which they work.  Notably, they pursued their own leads, determined their own methods for developing sales, and hired and maintained support staff if they determined a need for assistance.  Thus, there was not sufficient control to label the parties as the same "economic entity."  *Usery*, 527 F.2d at 1313.

### ii.      Opportunity for Profit and Loss

The Agents next maintain that the facts the district court relied on for evaluating the Agents' opportunity for profit and loss—their discretion to decide which sales methods to prioritize, decide how best to use their time each day, and opportunity to hire staff, and advertise—had nothing to do with managerial skill.  *See Scantland*, 721 F.3d at 1316 (stating that this factor "considers the alleged employee's opportunity for profit or loss *depending upon his managerial skill*" (emphasis added)).  The facts the district court pointed to reflect managerial skill and thus were proper determinants of this factor.

### iii.    *Investments*

Next, the Agents argue that the district court considered more than the necessary investments and therefore erroneously found that this factor pointed towards independent contractor status. Instead, the court should have focused exclusively on the investments that the business *required* to operate. *See id.* at 1317 (stating that the investment factor "considers the alleged employee's investment in equipment or materials required for his task, or his employment of workers").

In analyzing this factor, *Scantland* focused on whether the alleged employee's ability to hire employees was illusory—an optional investment. *Id.* at 1316–17. *Usery* focused on the employees' risk capital. *See Usery*, 527 F.2d at 1313–14. Neither of the cases compared the investment between the alleged employer and employee. Thus, a reading of our precedent reveals that courts may analyze investments the alleged employee has the ability to make and may also consider the alleged employee's risk capital.

We agree with the Agents that they did not have significant investments in the materials required for their tasks. Farm Bureau provided the software necessary to complete and log their duties. However, the Agents did invest personal capital into advertising and had the ability to employ support staff without the approval of Farm Bureau. The latter investment would be wholly the Agents', as they would be responsible for paying the salary of those hired

staff members.  Thus, they had the ability to hire workers, and also invested significant risk capital for the success of their business.[4]

### iv.    Other factors

Finally, we agree with the district court's well-reasoned analysis of the remaining factors.  We agree with its determination that licensure implicates special skill of an independent contractor, an average of 18 years indicates permanence of an employee, and the Agents' role is integral to Farm Bureau's business, again indicating an employment relationship.

### V.

Applying the *Scantland* factors with an eye towards economic independence reveals that the Agents exercised sufficient control over their business.  Accordingly, we **AFFIRM** the district court's order.

**AFFIRMED.**

---

[4] *See Yoder*, 2022 WL 1055184, at *7–8 (discussing the various risk capital the Agents invested into their business).